## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CHRISTINA SMITH, individually and as )
next friend of her son, Joshua England, )
                                      )
                Plaintiff, )
                                      )
v. )          **Case No. CIV-19-470-G**
                                      )
JOE ALLBAUGH, ET AL., )
                                      )
                Defendants. )

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
### AMENDED COMPLAINT WITH BRIEF IN SUPPORT

**COME NOW** Defendants Allbaugh, Bear, Balogh, Miles, Hays and Noble, and

respectfully move to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure for the reason that the Amended Complaint (Doc. 19) on file herein fails to

state a claim upon which relief can be granted.

### STATEMENT OF THE CASE

Plaintiff Christina Smith is the mother of former Oklahoma Department of

Corrections (DOC) inmate Joshua England.  Mr. England was housed at the Joseph Harp

Correctional Center (JHCC) when the instant claims allegedly arose.  At all times relevant to

Plaintiff's claims, Defendant Joe Allbaugh served as the Director of the DOC, Defendant

Carl Bear served as Warden of JHCC, Defendant Robert Balogh served as a physician at

JHCC, Defendant Wendell Miles was employed as a licensed Physician's Assistant at JHCC

and Defendants Laura Hays and Laura Noble served as Licensed Practical Nurses at JHCC.

In her Amended Complaint (Doc. 19), Plaintiff alleges that Mr. England died of

appendicitis after Defendants failed to provide medical treatment and/or adequate

supervision of prison staff.  Plaintiff seeks punitive and compensatory damages.  However, Defendants submit that Plaintiff's claims against them must be denied and dismissed.

## STANDARD FOR DISMISSAL

A complaint should be dismissed for failure to state a claim upon which relief can be granted when "it appears that the plaintiff can prove no set of facts in support that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997)).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (quoting *Sutton v. Utah State School for the Deaf & Blind*, 173 F.3d 1226 (10th Cir. 1999)).

## ARGUMENT AND AUTHORITY

## PROPOSITION I

**DEFENDANTS WERE ACTING WITHIN THE SCOPE OF THEIR
EMPLOYMENT AT ALL TIMES RELEVANT AND THEY
ARE IMPROPER PARTIES TO PLAINTIFF'S TORT CLAIMS.**

The Oklahoma Governmental Tort Claims Act ("GTCA") requires all tort actions falling under its purview to be brought against the State of Oklahoma or a political subdivision therein, and bars any action against an "employee of the state or political subdivision acting within the scope of his employment." *See* 51 O.S. § 163(C).  *See also Shepherd v. CompSource Oklahoma*, 2009 OK 25, 209 P.3d 288, 294 (the state or a political subdivision's "liability for loss resulting from the torts of its employees acting within the

scope of their employment ... is exclusive and in place of all other liability of an employee at common law or otherwise.")  Scope of employment is defined by the GTCA as follows:

> … performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud….

51 O.S. § 152(12).

In her second, fourth, fifth and seventh claims for relief, Plaintiff asserts various theories of tort liability against the individual Defendants, including negligence and medical malpractice.  In an apparent effort circumvent the GTCA's prohibition against suing state employees individually, Plaintiff suggests that the Defendants were not acting in the scope of employment when the instant claims arose because they were not acting in "good faith".  Doc. 19, ¶¶ 125, 134, 141, 145 and 149.  Notwithstanding this conclusory allegation, the tort claims against the individual Defendants are prohibited because they were acting within the course and scope of their employment at all times relevant.

In *Nail v. City of Henryetta,* 1996 OK 12, 911 P.2d 914, the Oklahoma Supreme Court held that "one acts within the scope of employment if engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business."  *Id.* at 917.  An employee exceeds the scope of employment only when his or her conduct is "so extreme as to constitute a clearly unlawful usurpation of authority the officer does not rightfully possess." *Tuffy's, Inc. v. City of Oklahoma City,* 2009 OK 4, 212 P.3d 1158, 1167.

In the course of treating Mr. England, as described in the Amended Complaint, Defendants did not ever act in bad faith or outside the scope of their employment. Plaintiff complains that Defendant Hays, a facility nurse, only gave inmate Joshua England pepto bismol when he first complained of stomach pain on May 22, 2018 and that she failed to call a doctor or surgeon. Doc. 19, ¶ 31. When Mr. England was seen on the following day, Plaintiff suggests that it was improper for Nurse Hays and Defendant Miles, a Physician's Assistant, to attempt to treat him with a laxative. *Id.* at ¶ 37. On May 26, 2018, Mr. England was treated again by PA Miles and facility nurse Laura Noble, who notified Dr. Robert Balogh of England's condition by telephone. *Id.* at ¶¶ 45-47. Yet, Plaintiff takes issue with the fact that Dr. Robert Balogh prescribed ibuprofen and made dietary recommendations instead of examining Mr. England in person. *Id.* at ¶ 47. Mr. England was seen again on May 29, 2018, and Nurse Hays ordered an EKG in response to his complaints that he couldn't breathe. *Id.* at ¶¶ 53-57. However, when Mr. England left his appointment before his EKG results were reviewed and subsequently waived further treatment, Plaintiff complains that Nurse Hays should have provided a wheelchair or stretcher to transport Mr. England back to the infirmary. *Id.* at ¶¶ 60, 74 and 76.

Even assuming Plaintiff's allegations are true, Defendants conduct did not rise to the level of an unlawful usurpation of authority that they did not possess. In fact, there is no indication in the Amended Complaint that Defendants realized England was suffering from appendicitis and intentionally or maliciously refused to treat the condition. Plaintiff repeatedly alleges that "a reasonable person" would not have conducted themselves in the same manner as Defendants in the course of treating Mr. England. Doc. 19, ¶¶ 63, 72, 75

and 76. However, unreasonable conduct is not tantamount to bad faith. The Oklahoma Supreme Court has determined that even illegal conduct or abuse of lawful power by a public officer may qualify as an act within the scope of employment when "it is done, however ill-advisedly, with a view to further the employer's interest or arises out of an emotional response to actions being taken for the employer." *Tuffy's*, 212 P.3d at 1166. Defendants' alleged misjudgment of the seriousness of England's medical condition is not suggestive of a failure to act in good faith. While Defendants' decisions may have been ill-advised, there is no indication that they were not attempting to further their employer's interests in housing and providing medical care to state inmates. Accordingly, Defendants were acting within the scope of their employment when Plaintiff's claims arose. And because Defendants were acting within the scope of their employment at all times relevant, Plaintiff's tort claims are improperly asserted against them individually and must be dismissed. *See* 51 O.S. § 163(C).

## PROPOSITION II

### PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM MUST FAIL.

Oklahoma recognizes the tort of intentional infliction of emotional distress as articulated in the Restatement (Second) of Torts § 46. *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1558 (10th Cir. 1995). Under Oklahoma law, to establish a prima facie case of intentional infliction of emotional distress, a plaintiff must show: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the plaintiff actually experienced emotional distress; and (4) the emotional distress was severe. *Durham v. McDonald's Rests. of Okla., Inc.*, 2011 OK 45, 256 P.3d 64, 66. The second element of this tort

requires proof that the defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct is regarded as atrocious and utterly intolerable in a civilized community. *Kraszewski v. Baptist Med. Ctr. of Okla., Inc.*, 1996 OK 141, 916 P.2d 241, 248.

The tort of intentional infliction of emotional distress is one which necessarily excludes good faith conduct on the part of a governmental entity's employees:

> One commits the tort of outrage, or intentional infliction of emotional distress, by extreme and outrageous conduct which, through the actor's intent or recklessness, causes severe emotional distress to another. *Breeden v. League Services Corp.*, 575 P.2d 1374, 1376-77 (Okla. 1978); *See Munley v. ISC Financial House, Inc.*, 584 P.2d 1336, 1338 (Okla. 1978). Extreme and outrageous conduct is conduct which is "so outrageous in character, and extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as utterly atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, Comment *d* (1965), quoted in *Breeden*, 575 P.2d at 1376.

*McMullen v. City of Del City*, 1996 OK CIV APP 46, 920 P.2d 528, 531 (Okla. Civ. App. 1996). The *McMullen* court noted there is no way to prove such a claim for intentional infliction of emotional distress if the defendant has acted in good faith. *Id. See Shaw v. City of Oklahoma City*, 380 P.3d 894, 897 (Okla. Civ. App. 2016) (concluding tort of intentional infliction of emotional distress required proof of bad faith and therefore could not be committed by city officers within scope of employment). As Defendants articulated at Proposition I, *supra*, Defendants were acting in good faith and within the course and scope of their employment at all times relevant. As such, the allegations of intentional infliction of emotional distress, asserted at Plaintiff's third claim for relief, must fail.

## PROPOSITION III

### PLAINTIFF'S OFFICIAL CAPACITY CLAIMS
### FOR DAMAGES MUST BE DISMISSED.

In her First Claim for Relief, Plaintiff alleges that Defendants, in their official capacities, violated Mr. England's constitutional rights.  Doc. 19, ¶ 118.  However, Plaintiff's claims for damages against these Defendants, in their official capacities, must fail. Specifically, any suit against a public official in his or her "official capacity" is treated as a suit against the governmental entity for which the official is an agent.  *Hafer v. Melo*, 502 U.S. 21 (1991).  Yet, states and their agencies are not persons under 42 U.S.C. § 1983 and are therefore not subject to suit under the statute.  *Will v. Michigan State Police*, 491 U.S. 58 (1989). Therefore, suits against officials in their official capacities cannot be maintained because individuals in their "official capacities" are not proper parties to a § 1983 action.  *Kentucky v. Graham*, 473 U.S. 159 (1985).  Furthermore, Defendants, in their official capacities, are immune from any suit for damages.  *See Pennhurst State School & Hospital v. Halderman*, 456 U.S. 89, 120 (1984).  Accordingly, Plaintiff's claims for damages must be dismissed against Defendants, in their official capacities.

## PROPOSITION IV

### DEFENDANTS ALLBAUGH AND BEAR DID NOT PERSONALLY
### PARTICIPATE IN A CONSTITUTIONAL VIOLATION.

As a general rule, "[i]ndividual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) ("Personal participation is an essential

allegation in a Section 1983 claim." (citations omitted)). A plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151–52 (10th Cir. 2006). Furthermore, government officials have no vicarious liability in a § 1983 suit for the misconduct of their subordinates, such as prison staff, because "there is no concept of strict supervisor liability under section 1983." *Jenkins v. Wood,* 81 F.3d 988, 994 (10th Cir. 1996) (quotation omitted). In other words, § 1983 does not authorize liability under a theory of respondeat superior.

In her first claim for relief, Plaintiff alleges that DOC Director Joe Allbaugh and JHCC Warden Carl Bear failed to supervise the medical Defendants - their subordinates - in a manner that ensured that proper medical care was provided to Joshua England. Doc. 19, ¶ 117. Plaintiff also alleges Director Allbaugh and Warden Bear's failure to hire competent prison staff rose to a level of a constitutional violation. *Id.* However, neither Bear nor Allbaugh was responsible for providing or supervising medical care for inmates. *See Wrenn v. Pine*, CIV-13-924-R, 2014 WL 4700003 (W.D. Okla. Sept. 19, 2014), citing DOC Policy 140101, which states that "the chief medical officer is responsible for administration of the medical services program of the Department of Corrections (DOC)." *Id.* at *2. Furthermore, even if Defendants did have some oversight of medical services at the prison, mere supervision of the medical defendants did not, in and of itself, give rise to a constitutional violation under a theory of respondeat superior. *Brown v. Montoya,* 662 F.3d

1152, 1164 (10th Cir. 2011).  Plaintiff fails to set forth any other allegation directly linking Defendants Allbaugh or Bear to a constitutional violation stemming from the conditions of Joshua England's incarceration.  As such, Plaintiff's claims against the "Senior Defendants" must fail.  *See Schneider v. Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (requiring a plaintiff to show an "affirmative link" between the supervisor and the constitutional violation). *See also Davis v. Okla. Cty.*, No. CIV–08–0550–HE, 2009 WL 2901180, at *4 (W.D. Okla. Sept. 3, 2009) (quoting *Serna*, 455 F.3d at 1153), which noted that "Plaintiff must base supervisory liability 'upon active unconstitutional behavior' and 'more than a mere right to control employees.'"

## PROPOSITION V

## PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIM MUST FAIL.

Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). *See also Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) ("Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety.").

To establish deliberate indifference based on prison officials failing to attend to an inmate's serious medical needs, a § 1983 plaintiff must satisfy an objective and subjective component. *See Mata v. Saiz,* 427 F.3d 745, 751-752 (10th Cir. 2005). First, under the objective component, the deprivation must be sufficiently serious; a prison official's act or

omission must result in the denial of the minimal civilized measure of life's necessities. *Farmer v. Brennan,* 511 U.S. at 834. Second, under the subjective component, the prison official must have acted with a sufficiently culpable state of mind, namely "deliberate indifference to inmate health or safety." *Id.* In this regard, deliberate indifference is established only when a prison official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate that harm. *Id.* at 837-38. For instance, the intentional denial or delay of access to medical care or intentional interference with treatment may constitute deliberate indifference. *Estelle v. Gamble,* 429 U.S. 97, 104-105 (1976).

However, a mere difference of opinion over the adequacy of medical treatment provided cannot provide the basis for an Eighth Amendment claim. *El'Amin v. Pearce,* 750 F.2d 829 (10th Cir. 1984); *Jones v. McCracken,* 562 F.2d 22 (10th Cir. 1977); *Smart v. Villar,* 547 F.2d 112 (10th Cir. 1976). *See also Johnson v. Stephan,* 6 F.3d 691, 692 (10th Cir. 1993) (holding that any disagreement regarding a prisoner's diagnosis does not support a claim of cruel and unusual punishment). Moreover, the negligent diagnosis or treatment of a medical condition or the accidental or inadvertent failure to provide medical care does not establish a medical wrong under the Eighth Amendment. *Estelle,* 429 U.S. at 105-106. *See also Daniels v. Gilbreath,* 668 F.2d 477, 487 (10th Cir. 1982) (holding that mere exposure to "an unreasonable risk of harm or simple negligence" does not constitute deliberate indifference).

In her first claim for relief, Plaintiff alleges that all Defendants were deliberately indifferent to Mr. England's medical needs. However, Plaintiff's own Amended Complaint shows that England was treated multiple times in the days leading up to his death and, at

most, misdiagnosed.  Specifically, Plaintiff alleges that on May 22, 2018, May 23, 2018 and May 26, 2018, England was treated for upset stomach and constipation and prescribed Pepto-Bismol, magnesium citrate (a laxative) and ibuprofen.  Doc. 19, ¶¶ 28-31, 34-37 and 44-47.  On May 29, 2018, after complaining of shortness of breath and an upset stomach, England was given an EKG but left the prison's medical clinic before seeing the provider. *Id.* at ¶¶ 52-60.  England declined to receive further treatment on this date because he did not want to walk to the prison's medical unit.  *Id.* at ¶ 74.  Thus, at no time was England denied medical treatment.  Plaintiff suggests that Nurse Hays' failure to provide a wheelchair and stretcher for Mr. England after he waived medical treatment on May 29, 2018 was unreasonable under the circumstances.  *Id.* at ¶¶ 71 and 79.  However, there is no indication in the Amended Complaint that Defendant Hays drew the inference that Mr. England was suffering from appendicitis and failed to transport him back to the medical unit or a hospital. Accordingly, Defendants did not know of and disregard Mr. England's medical needs.

Plaintiff alleges that that Mr. England was misdiagnosed, but a misdiagnosis does not rise to the level of deliberate indifference.  Specifically, the subjective component of the deliberate indifference analysis is not satisfied where the plaintiff simply complains of an "inadvertent failure to provide adequate care, negligent misdiagnosis, or ... difference of opinion with medical personnel regarding diagnosis or treatment." *Clemmons v. Bohannon*, 956 F.2d 1523, 1529 (10th Cir. 1992).  Plaintiff repeatedly suggests that Defendants should have conducted more extensive testing during Mr. England's illness, or that they should have undertaken emergency measures when Mr. England refused medical care on the day he passed away.  However, Plaintiff's differing opinion as to the course of treatment

Defendants chose for Mr. England is insufficient to support a claim for an Eighth Amendment violation. *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). *See also Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993). Plaintiff's claim must therefore be dismissed. *Ledoux v. Davies,* 961 F.2d 1536, 1537 (10th Cir. 1992), holding that no claim of constitutional dimension is stated where a prisoner challenges only matters of medical judgment or otherwise expresses a mere difference of opinion concerning the treatment received by an inmate. For the foregoing reasons, Plaintiff fails to state a claim for deliberate indifference.

<u>**PROPOSITION VI**</u>

**DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

A public official or employee is entitled to qualified immunity unless "clearly established" federal rights of which a reasonable person would have known are shown to have been violated. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Clearly established" is predicated on a finding that in light of pre-existing law the unlawfulness is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity is an entitlement not to stand trial or face the burdens of litigation. It is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 527 (1985). It is effectively lost if a case is erroneously permitted to proceed to trial. *Hannula v. City of Blakely,* 907 F.2d 129, 130 (10th Cir. 1990).

Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that (1) the defendant violated one of his constitutional rights, and (2) the right in question was clearly established at the time of the allegedly unlawful activity

such that "every reasonable official would have understood that what he [was] doing" violated the law. *Morris v. Noe,* 672 F.3d 1185, 1191 (10th Cir. 2012).

Whether qualified immunity exists is a question of law to be decided by the trial court. *England v. Hendricks,* 880 F.2d 281, 283 (10th Cir. 1989). "To determine whether a plaintiff can overcome the qualified immunity defense, 'first we determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then we decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right.'" *Roska ex rel. Roska v. Peterson,* 328 F.3d 1230, 1239 (10th Cir. 2003) (quoting *Garramone v. Roma,* 94 F.3d 1446, 1449 (10th Cir. 1996)).

"[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir. 1992). *Accord, Roska,* 328 F.3d at 1248. The contours of the invoked right must be sufficiently clear such that objectively reasonable state officers would understand that what they are doing violates that right. *Roska,* 328 F.3d at 1247 (citing *Anderson v. Creighton,* 483 U.S. 635 (1987)). "[T]he touchstone of [this] inquiry is whether the officers [were] on notice [that] their conduct [was] unlawful." *Id.* at 1248. (citations and quotations omitted). Thus, if the plaintiff has alleged a constitutional violation <u>and</u> has met his burden to establish that the law on the subject is clearly established, plaintiff must further show that a reasonable official would have known that his actions would violate clearly established law.

13

> In considering the "reasonable state actor," we must keep in mind that qualified immunity precludes the imposition of liability for 'all but the *plainly incompetent* or those who knowingly violate the law.' *Malley v. Briggs,* 475 U.S. 335, 341 (1986) (emphasis added). Where "officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Id. at 341.*

*Id.* at 1251.

For reasons more fully set forth at Propositions IV and V, *supra*, Plaintiff can't meet her burden of establishing that Defendants violated Joshua England's constitutional rights by failing to treat or misdiagnosing his medical condition. In the alternative, Plaintiff cannot meet her burden of demonstrating that the law is clearly established that medical negligence rises to the level of an Eighth Amendment violation. For the foregoing reasons, Defendants are entitled to qualified immunity.

## PROPOSITION VII

### THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS.

If the Court dismisses Plaintiff's claims arising under 42 U.S.C. § 1983, it should decline to exercise jurisdiction over Plaintiff's state law tort claims. Specifically, when all federal claims have been dismissed, the Court may, *and should*, decline to exercise jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) and *Bauchman v. West High School*, 132 F.3d 542, 549 (10th Cir. 1997), holding that "[i]f federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'" *See also Smith v. City of Enid*, 149 F.3d 1151 (10th Cir. 1998), *Ball v. Renner,* 54 F.3d 664, 669 (10th Cir. 1995), and *Sawyer v. County of Creek*, 908 F.2d 663, 668 (10th Cir. 1990).

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against Defendants Allbaugh, Bear, Balogh, Miles, Hays and Noble must be denied and this action dismissed in its entirety.

Respectfully submitted,

/s/ Kari Y. Hawkins
**KARI Y. HAWKINS, OBA #19824**
**RICHARD N. MANN, OBA #11040**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:  (405) 521-3921
Facsimile:  (405) 521-4518
Email:  Kari.Hawkins@oag.ok.gov
Email:  Richard.Mann@oag.ok.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of August, 2019, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of the Notice of Electronic Filing to the following ECF registrants:

Paul DeMuro
Frederic Dorwart, Lawyers PLLC
Old City Hall Building
124 East Fourth Street
Tulsa, OK  74103
*Attorney for Plaintiff*

Katherine Rosenfeld
Alison Frick
600 Fifth Avenue, 10th Floor
New York, New York  10020
*Attorneys for Plaintiff*

/s/ Kari Y. Hawkins
Kari Y. Hawkins