## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

CHRISTINA SMITH, individually and as next
friend of her son, Joshua England,

                Plaintiff,

– against –

JOE ALLBAUGH, CARL BEAR, ROBERT
BALOGH, WENDELL MILES, LAURA
HAYS, LAURA NOBLE, OKLAHOMA
DEPARTMENT OF CORRECTIONS
OFFICERS JOHN DOES #1-10, and CASE
MANAGER RICHARD ROE;

                Defendants.

**Case No.: 19-cv-00470-G**

 

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

 

**FREDERIC DORWART, LAWYERS PLLC**
124 East Fourth Street
Tulsa, Oklahoma 74103
(918) 583-9922

**EMERY CELLI BRINCKERHOFF & ABADY LLP**
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

# TABLE OF CONTENTS

PAGE NO.

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ..........................................................................................................................2

    I. DEFENDANTS WERE DELIBERATELY INDIFFERENT TO JOSHUA'S
       SERIOUS MEDICAL NEED .............................................................................................3

       A. Joshua's Medical Need Was Objectively Sufficiently Serious....................................4

       B. The Complaint Alleges Defendants Recklessly Disregarded the
          Substantial Risk of Serious Harm .................................................................................5

       C. Defendants Are Not Entitled to Qualified Immunity...................................................10

    II. THE STATE LAW CLAIMS AGAINST DEFENDANTS STATE PLAUSIBLE
        CLAIMS FOR RELIEF .................................................................................................11

       A. Whether Defendants Acted Outside the Scope of Their Employment Is a
          Question of Fact............................................................................................................12

       B. Plaintiff States a Claim for Intentional Infliction of Emotional Distress....................14

       C. Plaintiff's Negligence Claims Should Not Be Dismissed............................................16

    III. PLAINTIFF STATES A CLAIM AGAINST THE SENIOR DEFENDANTS ...............17

    IV. THERE ARE NO OFFICIAL CAPACITY CLAIMS TO DISMISS...............................19

CONCLUSION .....................................................................................................................19

# TABLE OF AUTHOTIES

**PAGE NO.**

## Cases

*Adams v. Garvin Cty. Bd. of Cty. Comm'rs*,
  No. CIV-14-1337, 2016 WL 5173395 (W.D. Okla. Sept. 21, 2016) ........................... 15

*Al-Turki v. Robinson*,
  762 F.3d 1188, 1193 (10th Cir. 2014) ................................................................... 5

*Ashcroft v. Iqual*,
  556 U.S. 662 (2009) .............................................................................................. 3

*Blackmore v. Kalamazoo Cty.*,
  390 F.3d 890 (6th Cir. 2004) ................................................................................ 9

*Bryson v. City of Okla. City*,
  627 F.3d 784 (10th Cir. 2010) ............................................................................ 12

*Bryson v. Macy*,
  611 F. Supp. 2d 1234 (W.D. Okla. 2009) ........................................................... 12

*Dodds v. Richardson*,
  614 F.3d 1185 (10th Cir. 2010) ..................................................................... 17, 18

*Estate of Booker v. Gomez*,
  745 F.3d 405 (10th Cir. 2014) .................................................................... 4, 5, 10

*Estelle v. Gamble*,
  429 U.S. 97 (1976) ................................................................................................ 4

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ..................................................................................... 4, 6, 7

*Gray v. Sorrels*,
  744 F. App'x 563 (10th Cir. 2018) ....................................................................... 5

*Johnson v. Stephan*,
  6 F.3d 691 (10th Cir. 1993) .................................................................................. 9

*Keith v. Koerner*,
  707 F.3d 1185 (10th Cir. 2013) ............................................................................ 3

*Ledoux v. Davies*,
  961 F.2d 1536 (10th Cir. 1992) ............................................................................ 9

*Lemay v. Winchester*,
   No. CIV-07-0401-HE, 2008 WL 5101260 (W.D. Okla. Nov. 26, 2008)...................... 12

*Maher v. Okla.*,
   165 F. Supp. 3d. 1089 (W.D. Okla. 2016)............................................................. 11, 16

*Mata v. Saiz*,
   427 F.3d 745 (10th Cir. 2005) ........................................................................ 4, 5, 7, 10

*McCracken v. Jones*,
   562 F.2d 22 (10th Cir. 1977) ........................................................................................ 8

*McMullen v. City of Del City*,
   1996 OK CIV APP 46, 920 P.2d 528 ......................................................................... 15

*Nail v. City of Henryetta*,
   1996 OK 12, 911 P.2d 914 ......................................................................................... 12

*Sanders v. Creek Cty. Bd. of Cty. Comm'rs*,
   No. 17-CV-492-JHP-FHM, 2018 WL 3580770 (N.D. Okla. July 25, 2018).................7

*Sherrod v. Lingle*,
   223 F.3d 605 (7th Cir. 2000) ........................................................................................ 9

*Smith v. United States*,
   561 F.3d 1090 (10th Cir. 2009) ................................................................................. 3, 8

*Tuffy's, Inc. v. City of Oklahoma City*,
   2009 OK 4, 212 P.3d 1158 ......................................................................................... 16

*Williams v. Bd. of Cty. Comm'rs of Grady Cty.*,
   No. CIV-13-759-M, 2014 WL 5039821 (W.D. Okla. Oct. 8, 2014) ............................ 3

*Williams v. Platt*,
   No. CIV-03-281-C, 2006 WL 2042605 (W.D. Okla. July 18, 2006) .......................... 10

## STATUTES AND OTHER AUTHORITIES

42 U.S.C. § 1983 ...................................................................................................... 1, 4

Okla. Stat. tit. 51, § 152(12) ......................................................................................... 11

Okla. Dep't of Corrections Policy 140100...................................................................... 19

Fed. R. Civ. P. 15........................................................................................................... 19

## PRELIMINARY STATEMENT

On May 29, 2018, a 21-year-old prisoner at the Joseph Harp Correctional Facility ("Joseph Harp"), Joshua England, died from untreated appendicitis. During the seven days that preceded Joshua's death, he endured nearly constant and extreme suffering. Joshua's death and suffering were not only unnecessary, tragic, and preventable; they were the consequence of the outrageous failure by the Defendants—medical and correctional staff at Joseph Harp—to help Joshua, to examine him, and to treat his obviously dire medical condition. Although, for seven days, Joshua literally begged the Joseph Harp medical staff for help, they failed to provide medical care to him. Over those seven days, Defendants failed to appropriately examine Joshua, refer him to a physician, or take him to the hospital. When he was hours from death and delirious with toxic shock, Defendant Hays wrote in Joshua's medical chart that he faced "possible death"—but Defendants still failed to summon an ambulance. Instead, they left Joshua to die alone on the floor of his prison cell. At his death, Joshua was just a few weeks past his twenty-first birthday.

It is hard to imagine a more blatant and shocking case of deliberate indifference to a dire medical need. Yet Defendants have the gall to ask this Court to declare, as a matter of law, that their conduct was *reasonable* and to therefore dismiss Plaintiff's entire case. Unsurprisingly, in light of the egregious facts of this case, Defendants' arguments fail legally.

First, under established, controlling law addressing a prisoner's constitutional right to minimally adequate medical care, Plaintiff Christina Smith (Joshua's mother) has more

than adequately stated a § 1983 claim that Defendants violated Joshua's constitutional rights by being deliberately indifferent to his serious and obvious medical needs. For many days, Joshua suffered excruciating abdominal pain, he could not breathe or even think normally, his vital signs were alarming and erratic, and he could barely walk. He died a terrible death, alone in his cell, from untreated appendicitis. Nor can it be contested that Defendants were aware of his serious and obvious medical need and yet did nothing to address it. *Infra* I-A & B. The detailed allegations further defeat Defendants' assertion of qualified immunity, especially at this stage. *Infra* I-C.

<u>Second</u>, Plaintiff's state law claims against the Defendants individually survive, because she plausibly alleges that Defendants' conduct was taken in bad faith, outside the scope of their employment. Because that question is ultimately one of fact for the jury to determine, Plaintiff's state law claims should not be dismissed. *Infra* II.

<u>Third</u>, Plaintiff has plausibly alleged that the Senior Defendants were personally involved in the deprivations that caused Joshua's harm. *Infra* III.

The First Amended Complaint ("FAC") contains disturbing, detailed allegations of Defendants' systematic and repeated failure to treat Joshua like a human being—a failure that led to his entirely preventable and tragic death at a very young age, while serving a sentence of less than a year. Plaintiff has made out a plausible case against Defendants on all claims asserted. The motion should, therefore, be denied.

## ARGUMENT

So long as a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" it survives a motion to dismiss.

*Williams v. Bd. of Cty. Comm'rs of Grady Cty.*, No. CIV-13-759-M, 2014 WL 5039821, at *1 (W.D. Okla. Oct. 8, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts will deny a motion to dismiss where the complaint "provide[s] notice and nudge[s] [a plaintiff's] claims beyond the conceivable to the plausible." *Keith v. Koerner*, 707 F.3d 1185, 1189 (10th Cir. 2013) (denying a motion to dismiss on qualified immunity grounds in case alleging prison officials were deliberately indifferent to the risk of sexual assault). The Court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Evaluated under these standards, the FAC makes out plausible claims that Defendants violated Joshua's constitutional rights by acting with deliberate indifference to his prolonged suffering and that, acting with bad faith and in abuse of their power, they were negligent in their treatment of him and that they intentionally caused him severe emotional distress. Plaintiff's claims should not be dismissed.

## I.     DEFENDANTS WERE DELIBERATELY INDIFFERENT TO JOSHUA'S SERIOUS MEDICAL NEED

For a week, Defendants refused to treat or take Joshua's complaints seriously, even as he reported excruciating and worsening abdominal pain. After a week of suffering, Joshua died of a common, treatable illness that should never have killed him. The stark and disturbing facts laid out in Plaintiff's FAC—which include the actual copies of Joshua's five separate written pleas for help, *see* FAC Figs. 1-5, ¶¶ 28, 35, 40, 44, 52—more than sufficiently state a claim that Defendants violated Joshua's

constitutional rights by their deliberate indifference to his serious medical needs. If any complaint states a claim for deliberate indifference to a prisoner's serious medical needs, it is this one.

Over forty years ago, the Supreme Court affirmed the "government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Government officials' "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain manifested by prison doctors in their response to the prisoner's needs proscribed by the Eighth Amendment." *Id*. at 104-05.

Plaintiff more than sufficiently pleads the two components of a deliberate indifference claim. The objective component can hardly be contested, because "the deprivation at issue was in fact sufficiently serious." *Estate of Booker v. Gomez*, 745 F.3d 405, 430 (10th Cir. 2014). Second, the subjective component is met because Plaintiff has alleged facts showing that Defendants "'acted or failed to act *despite [their] knowledge of a substantial risk* of serious harm.'" *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). No basis exists to dismiss Plaintiff's well-pleaded § 1983 claim.

A.    **Joshua's Medical Need Was Objectively Sufficiently Serious**

Joshua's excruciating abdominal pain—and other textbook symptoms of readily treatable appendicitis (*e.g.* acute and persistent abdominal pain and irregular vital signs) and impending death (*e.g.*, shortness of breath, racing heartrate, mental disorientation)— were medical conditions "so obvious that even a lay person would easily recognize the

necessity for a doctor's attention," *id.*, 427 F.3d at 751. "The point of the objective prong of the deliberate indifference test is to limit claims to significant, as opposed to trivial, suffering." *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (internal quotation marks omitted).

Joshua's condition, which killed him in a matter of days, is sufficiently "serious" to meet the objective component of his constitutional claim. *Cf. Mata*, 427 F.3d at 754 ("[S]evere chest pain . . . is a serious medical condition under the objective prong of the Eighth Amendment's deliberate indifference standard."); *Gray v. Sorrels*, 744 F. App'x 563, 569 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1335 (2019) (harm caused by delay in treating plaintiff's swollen, painful knees was sufficiently serious to meet the objective prong); *Al-Turki*, 762 F.3d at 1193 (plaintiff's severe abdominal pain lasting several hours, even with its "relatively benign cause," met the objective prong).

Defendants wisely do not contest that Plaintiff's claims set forth a sufficiently "significant, as opposed to trivial" medical need to satisfy the objective prong of a § 1983 deliberate indifference claim.

## B. The Complaint Alleges Defendants Recklessly Disregarded the Substantial Risk of Serious Harm

Defendants' failure to treat Joshua and save his life came in spite of their knowledge of a substantial risk of serious harm to him, easily satisfying the "subjective" prong of a deliberate indifference claim. *Mata*, 427 F.3d at 752; *Booker*, 745 F.3d at 430 (subjective component met when plaintiff shows official "acted or failed to act despite his knowledge of a substantial risk of serious harm" (quotation marks omitted)). Defendants'

knowledge of a substantial risk is a question of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. At this stage, the complaint alleges sufficient facts to show that Defendants were aware of and recklessly disregarded the substantial harm Joshua faced.

Defendants knew of Joshua's dire and deteriorating condition—both because he told them about it directly and because they measured it themselves. Over multiple pleas for help during the last seven days of his life, Joshua repeatedly told Defendants about his pain and worsening condition:

- 5/22/18: Joshua complained of vomiting all night and rated his stomach pain at a level 8 out of 10. FAC ¶¶ 28-29.

- 5/23/18: Joshua stated that he could "barely breath[e]," could not eat anything, and had blood in his stool, and rated his pain at level 10 out of 10. *Id.* ¶¶ 35-36.

- 5/26/18: Joshua repeated his complaint of severe pain, said he could not breath or lie down, and rated his pain as a level 9 out of 10. *Id.* ¶¶ 44-45.

- 5/29/18: Joshua complained he was short of breath and that he could not walk. ¶¶ 52-53, 70.

Joshua's complaints were confirmed by the objective evidence Defendants themselves recorded:

- 5/22/18: Defendants recorded that Joshua had lost six pounds in six days. *Id.* ¶ 29. They also noted that Joshua was "guarding" his abdomen. *Id.* ¶ 30.

- 5/23/18: Defendants recorded Joshua's heartrate 102 beats per minute, spiking dramatically from 61 beats per minute they recorded the day before. *Id.* ¶ 36.

- 5/26/18: Defendants recorded Joshua's elevated pulse. ¶ 45.

- 5/29/18: Defendants recorded that Joshua had lost 12 pounds in less than two weeks, that he appeared "distraught" and was "sweating profusely," and that his heart rate had soared to 158 beats per minute. *Id.* ¶¶ 54-57.

- 5/29/18: **Hours before Joshua died, Defendant Hays recorded that he faced "possible death."** *Id.* ¶¶ 74-75.

Joshua's persistent complaints, combined with the objective measures of his dire illness Defendants themselves recorded, could easily lead a factfinder "conclude that [Defendants] knew of a substantial risk from the very fact that the risk was obvious." *Mata*, 427 F.3d at 752. After all, "if a risk is so obvious that a reasonable man would realize it, we might as well infer that [Defendants] did in fact realize it." *Id.* Certainly Plaintiff has satisfied the pleading requirements to defeat a motion to dismiss. *See, e.g.*, *Sanders v. Creek Cty. Bd. of Cty. Comm'rs*, No. 17-CV-492-JHP-FHM, 2018 WL 3580770, at *7 (N.D. Okla. July 25, 2018) (where plaintiff alleged that jail officials failed to respond to her deteriorating health over 35 days, before sending her to the hospital, where she died the next day, "a reasonable inference can be made that . . . medical personnel had actual knowledge of Plaintiff's serious medical condition"). Ultimately, the question of Defendants' knowledge is one of fact that must be determined by the factfinder. *Farmer*, 511 U.S. at 842.

These detailed allegations—documenting Defendants' refusal to take Joshua seriously and provide him life-saving treatment—put the lie to Defendants' attempt to spin those allegations into claims of "a mere difference of opinion over the adequacy of medical treatment" or an "accidental or inadvertent failure to provide medical care." *See* Doc. 21 at 10. There was nothing accidental or inadvertent about Defendants' disregard

of Joshua's racing pulse, the blood in his stool, his weight loss, or his repeated reports of unbearable abdominal pain—*the classic symptoms of appendicitis.*

The allegations in the FAC cannot conceivably be read to support an inference that Defendants' actions were accidental or inadvertent. Nor can the FAC be fairly read to allege that Defendants merely differed in their opinion of Joshua's medical condition. Indeed, hours before Joshua died—when there could still be time to save him— Defendant Hays wrote that Joshua faced imminent death—even as she refused to provide life-saving treatment to him. FAC ¶ 74. Joshua never "refused medical care," as Defendants falsely claim. *Cf.* Doc. 21 at 11. Instead, Defendants either fraudulently executed the waiver form or compelled Joshua to "sign" the form when he was in a delirious state and obviously not competent to do so. *See, e.g.*, FAC ¶¶ 72-76. Defendants' self-serving statements that contradict the FAC's well pled allegations cannot support dismissal. *See Smith*, 561 F.3d at 1098 (on a motion to dismiss, the court must accept plaintiff's allegations as true and view them in the light most favorable to plaintiff). The only fair reading of the FAC is that Defendants knew or should have known of the substantial harm Joshua faced and yet they did nothing about it.

The cases Defendants rely on are just as inapposite as the "facts" they purport to marshal in their support. *Cf.* Doc. 21 at 10-12. For example, the plaintiff in *McCracken v. Jones*, 562 F.2d 22 (10th Cir. 1977) received substantial medical treatment—including at a local hospital; his lawsuit centered on whether prison officials were required to seek a second opinion for his treatment. Moreover, the decision Defendants cite was an appeal from a full jury trial—a far cry from a decision at the motion to dismiss stage. Similarly,

in *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992), the court—on summary judgment—rejected plaintiff's § 1983 claim seeking treatment by a specialist where he was taken to an outside hospital, underwent surgery, and given medication for his twisted ankle.

By contrast, Joshua never had the benefit of receiving a *first* opinion from qualified, competent medical professionals, let alone the chance to ask for a second one, or the benefit of treatment from *any* doctor, much less a specialist. Defendants' willful refusal to fully examine Joshua, let alone send him out to a hospital for treatment, has nothing in common with the defendants' actions in *McCracken* or *Ledoux*. *Cf.* Doc. 21 at 10, 12 (citing *Johnson v. Stephan*, 6 F.3d 691 (10th Cir. 1993), where plaintiff received treatment for his leg pain, but disagreed with the treatment plan).

To characterize Defendant's deadly indifference to Joshua's suffering as "a mere difference of opinion," Doc. 21 at 10, grossly mischaracterizes Plaintiff's allegations. At best, Defendants simply raise questions of fact that cannot be determined on a motion to dismiss. *Cf. Sherrod v. Lingle*, 223 F.3d 605, 611-12 (7th Cir. 2000) ("If knowing that a patient faces a serious risk of appendicitis, the prison official gives the patient an aspirin and an enema and sends him back to his cell, a jury could find deliberate indifference although the prisoner was not 'simply ignored.'"); *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004) (denying summary judgment were officers' delay in treating plaintiff's appendicitis, "an obvious medical emergency[,] posed a substantial risk of serious harm to Blackmore by subjecting him to unnecessary infliction of pain").

### C. Defendants Are Not Entitled to Qualified Immunity

Without actual argument, Defendants assert that they are entitled to qualified immunity because Plaintiff "can't meet her burden of establishing that Defendants violated Joshua England's constitutional rights by failing to treat" him or showing that "medical negligence" constitutes a constitutional violation. Doc. 21 at 14. Of course, Plaintiff bears no such burden at this stage. Nor does she assert that Defendants were merely negligent. Plaintiff's allegations that Defendants' utter disregard for Joshua's critical condition caused his death are sufficient to plausibly allege that Defendants were deliberately indifferent to his medical needs, in violation of his Eighth Amendment rights that were clearly established at the time of his death.

Construing the facts alleged as true, a reasonable jury could of course find that Defendants' shocking refusal to treat Joshua's common (but deadly) appendicitis constituted deliberate indifference to his medical needs. *Supra*, I-A & B. Further, "there is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right[.]" *Mata*, 427 F.3d at 749.

Other than their stock denial that they violated Joshua's constitutional rights, Defendants present no basis to dismiss Plaintiff's complaint on qualified immunity grounds at this stage of the proceedings. There is none. *See, e.g., Booker*, 745 F.3d at 411 (court must reject summary judgment on qualified immunity grounds where a reasonable jury could find facts supporting a violation of a constitutional right that was clearly established at the time of the defendant's conduct); *Williams v. Platt*, No. CIV-03-281-C, 2006 WL 2042605, at *9 (W.D. Okla. July 18, 2006) (denying summary judgment,

including on qualified immunity grounds, where plaintiff "provided evidence" that he had sufficiently serious medical needs that were "known and disregarded" by Defendants).

## II.    THE STATE LAW CLAIMS AGAINST DEFENDANTS STATE PLAUSIBLE CLAIMS FOR RELIEF

Defendants' conduct was so outrageous as to exceed the scope of their employment. They are thus liable individually under state law as well as for violating Plaintiff's constitutional rights.

Individual governmental employees, including Defendants, are immune from suit under Oklahoma's Government Tort Claims Act only when the claims arise from conduct performed in the scope of their employment. Only actions that are taken "in good faith" constitute actions taken in the scope of employment. Okla. Stat. tit. 51, § 152(12). "Thus, where a law enforcement officer abuses his lawful power, the officer may be personally liable for the resulting tort because such abuse negates a finding that he acted in good faith." *Maher v. Okla.*, 165 F. Supp. 3d. 1089, 1098 (W.D. Okla. 2016).

For Defendants to win their motion to dismiss Plaintiff's state law claims, this Court would have to rule—based only on the pleadings—that, as a matter of law, Defendants were acting in good faith. But that is a question for the jury. Here, Plaintiff plausibly alleges that Defendants acted in bad faith and abused their power when they stood by and watched 21-year-old Joshua die of a common, treatable illness. Defendants characterize their conduct differently—as perfectly normal, if possibly "ill-advised." Doc. 21 at 5. But in the face of Plaintiff's detailed claims, they cannot show *as a matter of law* that they acted in good faith. And since Plaintiff has sufficiently raised at least a question

of fact as to whether Defendants acted in bad faith, she has both sufficiently pled an intentional infliction of emotional distress ("IIED") claim, which requires a showing of extreme or outrageous conduct, and her negligence claims. Since the Court cannot declare, at this stage, that Defendants acted with good faith as a matter of law, Plaintiff's negligent and intentional tort claims against Defendants must proceed.

## A. Whether Defendants Acted Outside the Scope of Their Employment Is a Question of Fact

"The question of whether an employee has acted within the scope of his employment at any given time is normally a question for the jury, except in cases where only one reasonable conclusion could be drawn from the facts." *Nail v. City of Henryetta*, 1996 OK 12, 911 P.2d 914, 916. Where a plaintiff states a plausible claim for deliberate indifference to serious medical needs, "more than one reasonable conclusion can be drawn as to the scope of employment issue"—*i.e.*, there are sufficient allegations that the defendant acted outside the scope of his employment. *Lemay v. Winchester*, No. CIV-07-0401-HE, 2008 WL 5101260, at *10 n.8 (W.D. Okla. Nov. 26, 2008); *see also Bryson v. Macy*, 611 F. Supp. 2d 1234, 1266 (W.D. Okla. 2009), *aff'd sub nom. Bryson v. City of Okla. City*, 627 F.3d 784 (10th Cir. 2010) (denying summary judgment because scope of employment is a question for the jury).

Defendants' conclusory assertion that they were acting within the scope of their employment when they allowed Joshua to suffer and die needlessly is not, as a matter of law, the "only . . . reasonable conclusion[that] could be drawn from the facts." *Nail*, 911 at 916. Indeed, given the detailed allegations of Defendants' repeated refusals to treat

Plaintiff's excruciating pain and obviously dire condition, over the course of many days, it is a particularly *un*reasonable conclusion.

The FAC makes *at least* a plausible case that Defendants acted in bad faith and thus outside the scope of their employment. For example, Plaintiff alleges—referring to Joshua's medical records—that:

- During at least four separate visits to the clinic, the Medical Defendants failed to perform a complete abdominal exam on Joshua. FAC ¶¶ 30, 36, 46, 58.

- The Medical Defendants failed to heed or take seriously Joshua's consistent reports of extreme and excruciating pain—reports they documented in Joshua's medical records. *Id.* ¶¶ 28-29, 34-36, 42, 44-45, 52-56.

- The Medical Defendants refused to pay attention to the objective measures *they themselves recorded in his chart*, including Joshua's alarmingly high heart rate and dramatic weight loss, that indicated Joshua was in dire straits. *Id.* ¶¶ 29, 36, 54, 57.

- The Medical Defendants refused to ensure that Joshua was even *seen* by a physician, *id.* ¶¶ 31, 38, 47, 62-64; refused to take him to an outside facility for diagnosis and treatment, *id.* ¶¶ 59, 65, 71; and, in Joshua's final hours, refused to take emergency action to save his life, *id.* ¶¶ 69-80.

- Just hours before Joshua died, Defendants Hays, Officer John Doe #10, and Case Manager Richard Roe visited Joshua's cell—not to provide life-saving care or to transport him to a hospital, but instead to record a video of him dying. *Id.* ¶¶ 69-71.[1]

- After Joshua's death, the Medical Defendants attempted to cover up their conduct by falsifying medical records. *Id.* ¶¶ 83-85.

- The Officer Defendants stood by and watched Joshua suffer for days, vomiting and lying on the floor of his cell and hyperventilating, and yet took no action to help him—and, indeed, made fun of him instead. *Id.* ¶ 39 (Joshua was sleeping on the floor of his cell because he lacked the strength to climb to his top bunk), ¶ 43 (officers and medical staff made fun of

---

[1] Plaintiff has requested a copy of this video, but Defendants have refused to provide it.

Joshua), ¶ 49 (Joshua stayed on the floor of his cell crying in agony); ¶ 51 (the Officer Defendants saw Joshua's distress but failed to take any action to alleviate his suffering), ¶ 55 (Joshua was seen doubled-over in pain and hyperventilating).

- The Senior Defendants hired dangerously incompetent medical professionals and failed entirely to supervise them, *id*. ¶¶ 91-96; created the procedures by which Joshua was permitted to languish, day after day, complaint after complaint, without life-saving treatment, *id*. ¶¶ 67, 77, 96-97; and took no steps to ensure that those incarcerated at Joseph Harp like Joshua had the minimal medical care the Constitution requires, *id*. ¶¶ 98-100.

The FAC lays out the myriad ways Defendants abused their power and failed to act in good faith. At the very least, a reasonable jury could find that these were not the actions of good-faith employees.

Defendants mischaracterize these allegations—for example, Joshua *never* "waived further treatment"—or ignore them outright. Doc. 21 at 4. Plaintiff's detailed and extensive allegations of bad faith conduct from top to bottom—including Defendants' falsifying of records after Joshua died—precludes a finding at this stage that, *as a matter of law*, Defendants acted in good faith within the scope of their employment. If Defendants want to argue to a jury that their refusal to provide life-saving care to Joshua actually furthered their employer's interest (*e.g.*, Doc. 21 at 5), they will be free to do so. But asserting it here, in direct contradiction to the detailed allegations of the actual pleading, provides no basis for dismissal.

## B. Plaintiff States a Claim for Intentional Infliction of Emotional Distress

Defendants' entire argument for why Plaintiff's IIED claim should be dismissed is that the claim requires a showing of extreme or outrageous conduct, such a showing is by

definition excluded from conduct taken within the scope of one's employment, and thus the claim must be dismissed because Defendants were acting within the scope of their employment. Doc. 21 at 6., Plaintiff alleges that Defendants acted "by extreme and outrageous conduct, which, through [their] intent or recklessness, cause[d] severe emotional distress." *Id.* (quoting *McMullen v. City of Del City*, 1996 OK CIV APP 46, 920 P.2d 528, 531). As shown above, the FAC is replete with detailed allegations displaying Defendants' reckless, bad faith conduct.

Courts have held that where a claim requires a showing of bad faith consistent with a finding that officers acted outside the scope of their employment, like IIED, the Government Tort Claims Act provides no basis to immunize individual defendants. *See, e.g.*, *Adams v. Garvin Cty. Bd. of Cty. Comm'rs*, No. CIV-14-1337, 2016 WL 5173395, at *22 (W.D. Okla. Sept. 21, 2016) (denying individual officers' request for summary judgment on assault and battery claims, because, if the act occurred as plaintiffs alleged, "such an act could not be done in good faith"). Where the acts as alleged "could not have happened without the officers acting in bad faith and in turn, outside the scope of their employment," those officers may be individually liable. *Id.* at *22.

Plaintiff agrees that her IIED claim fails *if* Defendants were acting in good faith, *cf.* Doc. 21 at 6. But Plaintiff alleges that Defendants were *not* acting in good faith. She alleges that Defendants acted outrageously, in bad faith, with deliberate indifference to Joshua's suffering. Because the question is ultimately for a jury to determine, there is no basis, and Defendants have presented none, to dismiss Plaintiff's IIED claim.

### C.     Plaintiff's Negligence Claims Should Not Be Dismissed

That Plaintiff's negligence-based claims, unlike the IIED claim, do not *require* a showing of bad faith does not negate the allegations showing that Defendants acted outside the scope of their employment and are thus individually liable. Thus, if a jury determines that Defendants acted with bad faith, they can still be liable even for negligence claims that do not require such a showing. For this reason, the *Maher* court refused to dismiss the individual negligence claims against a police officer who shot and killed a man, holding that the complaint could be read to permit a finding that the police officer acted outside the scope of his employment. 165 F. Supp. 3d at 1098-99. The court reasoned that since the plaintiff had sufficiently pled a § 1983 claim for excessive force, she had also sufficiently pled facts supporting a finding that the officer acted with bad faith. *Id.* Even though bad faith is not an element of a negligence claim, it is in no way inconsistent with negligence; the court read the plausible allegations of reckless and bad faith behavior to permit the plaintiff's negligence claim to move forward. *Id.*; *see also Tuffy's, Inc. v. City of Oklahoma City*, 2009 OK 4, ¶ 20, 212 P.3d 1158, 1167 ("In the instant cause, it is a jury question concerning whether the police officers were negligent when removing customers from the nightclub and, if so, whether the officers were acting within the scope of their employment.").

Similarly here, Plaintiff has pled facts sufficient to show that Defendants were deliberately indifferent to Joshua's medical needs—that they acted outrageously and in a manner that shocks the conscience. *See generally supra*, I. Accordingly, Plaintiff has simultaneously pled facts sufficient to permit a jury to find Defendants acted in bad faith,

outside the scope of their employment, permitting the negligence claims against the individual Defendants to go forward.

## III.   PLAINTIFF STATES A CLAIM AGAINST THE SENIOR DEFENDANTS

Senior Defendants Joe Allbaugh, the Director of the Department of Corrections at the time of Joshua's death, and Carl Bear, the Warden of Joseph Harp, are individually liable because, through their actions and omissions, they were deliberately indifferent to Joshua's serious medical needs and were negligent in hiring (and supervising) dangerously incompetent medical providers. Plaintiff's allegations sufficiently state a claim for the Senior Defendants' personal liability.

Under a Section 1983 claim, a plaintiff may:

> impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution.

*Dodds v. Richardson*, 614 F.3d 1185, 1199–200 (10th Cir. 2010) (internal quotation marks and alterations omitted). Plaintiff may succeed in her § 1983 claim against Allbaugh and Bear by showing they "promulgated, created, implemented or possessed responsibility for the continued operation of a policy" that caused the harm to Joshua and that they acted with the requisite intent: here, deliberate indifference. *Id*.

Plaintiff's allegations plausibly plead these necessary components. Plaintiff alleges that Allbaugh was responsible for the training and supervising of all DOC employees, for the care of all DOC inmates, and for "the creation, promulgation,

implementation, and oversight of policies and programs governing on-site medical treatment programs for inmates of prison facilities, including Joseph Harp." FAC ¶ 6. Plaintiff alleges that Bear was responsible for the care of Joseph Harp inmates and the creation and implementation of policies and programs governing on-site medical treatment of Joseph Harp inmates. *Id.* ¶ 7. Plaintiff further alleges that Allbaugh and Bear hired and retained Defendants Miles and Balogh despite the fact that both employees had been formally disciplined *and* had their medical licenses suspended because of drug-related misconduct, including abusing their positions to obtain drugs. *Id.* ¶¶ 93-96. Despite this disciplinary history, Allbaugh and Bear hired, continued to employ, and failed to supervise these individuals, who stood by while Joshua suffered and died. In other words, Allbaugh and Bear "may have played more than a passive role in the alleged constitutional violation—[they] may have deliberately enforced or actively maintained the policies in question at the [prison]." *Dodds*, 614 F.3d at 1204. Taking the allegations as true, Plaintiff has stated a plausible claim for Allbaugh and Bear's liability.

Defendants cite to sources outside the FAC to claim that the Senior Defendants were not responsible for the provision of medical care to inmates. Doc. 21 at 8 (citing DOC Policy 140101). But the DOC policy that creates standards to "[p]rovide constitutionally required health care for inmates," requires "qualified health care professionals" be available "to serve inmates' needs and provide medical referrals as appropriate," and states that emergency services will be available 24 hours a day, 7 days

a week. DOC Policy 140100.[2] It concludes: "The director is responsible for compliance with this policy. The director is responsible for the annual review and revisions." *Id.* Whether Defendants violated DOC policy and their role in creating or shaping DOC policy are all questions of fact that must be explored through discovery and cannot support a pre-answer dismissal.[3]

## IV. THERE ARE NO OFFICIAL CAPACITY CLAIMS TO DISMISS

Plaintiff sued Defendants in their individual capacities. FAC ¶ 8 ("The Senior Defendants are sued in their individual capacities."); ¶ 13 ("The Medical Defendants are sued in their individual capacities."); ¶ 14 ("The Officer Defendants are sued in their individual capacities."). As Plaintiff brings no official capacity claims, there are no such claims for this Court to dismiss.

## CONCLUSION

Joshua suffered for a week and died at the young age of 21 of a treatable illness that should not kill anyone in this day and age. He suffered and died because Defendants refused to provide the most basic kinds of medical care to him, instead shooing him away from the medical clinic day after day after day. Defendants' insistence in their motion that this conduct is normal, excusable, and routine is as disturbing as it is legally deficient. Plaintiff's detailed allegations state a plausible claim that Defendants violated

---

[2] Available at http://doc.ok.gov/Websites/doc/images/Documents/Policy/p140100.pdf.

[3] To the extent this Court determines that Plaintiff should have sued other parties, or that she has failed to state a claim against the Supervisor Defendants, leave to amend to add parties and/or replead facts as they are developed during discovery should be granted. *See* Fed. R. Civ. P. 15(a)(2) (leave to amend should be freely given).

Joshua's constitutional rights and abused their power when they callously denied him life-saving treatment. Plaintiff's case should move forward to discovery so Plaintiff can learn why Joshua was permitted to suffer excruciating pain and die a needless death, alone on a cold prison cell floor. Defendants' motion should be denied.

Dated: September 17, 2019

RESPECTFULLY SUBMITTED:

*/s/* Paul DeMuro
Paul DeMuro, OBA No. 17605
FREDERIC DORWART, LAWYERS PLLC
124 East Fourth Street
Tulsa, Oklahoma 74103
(918) 583-9922 - Telephone
(918) 583-8251 – Facsimile
pdemuro@fdlaw.com

Katherine Rosenfeld
*(admitted pro hac vice)*
Alison Frick
*(admitted pro hac vice)*
EMERY CELLI BRINCKERHOFF
& ABADY LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000 - Telephone
(212) 763-5001 – Facsimile

***Attorneys for Plaintiff,***
***Christina Smith***

## <u>CERTIFICATE OF SERVICE</u>

        The undersigned does hereby certify that on the 17th day of September 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the applicable ECF registrants.

/s/ Paul DeMuro