## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

CHRISTINA SMITH, individually          )
and as next friend of her son, Joshua  )
England,                               )
                                       )
     Plaintiff,          )
                                       )
v.                                     )    Case No. CIV-19-470-G
                                       )
JOE ALLBAUGH et al.,                   )
                                       )
     Defendants.         )

## OPINION AND ORDER

Now before the Court is the Motion to Dismiss (Doc. No. 21), filed through counsel

on August 13, 2019, by Defendants Allbaugh, Bear, Balogh, Miles, Hays, and Noble.

Plaintiff has responded in opposition (Doc. No. 27). Having reviewed the parties'

submissions and the relevant record, the Court makes its determination.

### BACKGROUND

Plaintiff's claims arise from the death of Plaintiff's son Joshua England

("England")[1] from a ruptured appendix in May 2018, while England was housed at the

Joseph Harp Correctional Center ("JHCC"), an Oklahoma Department of Corrections

("ODOC") facility in Lexington, Oklahoma. *See* Am. Compl. (Doc. No. 19) at 1, 6-18.[2]

Plaintiff names as defendants former ODOC Director Joe Allbaugh, former JHCC Warden

---

[1] Defendants have not challenged Plaintiff's standing to asserts claims under 42 U.S.C. §
1983 based on violations of Joshua England's civil rights.

[2] References to documents filed in this Court use the CM/ECF pagination.

Carl Bear, ODOC physician Dr. Robert Balogh, ODOC physician's assistant Wendell Miles, ODOC licensed practical nurses Laura Hays and Laura Noble, ODOC officers John Doe #1-10, and JHCC case manager Richard Roe.[3]  Plaintiff is suing these defendants in their individual capacities and is seeking compensatory and punitive damages, as well as attorneys' fees and costs.  *See id.* at 2-5, 31.

In her pleading, Plaintiff brings claims under 42 U.S.C. § 1983 against all named Defendants, alleging violations of England's Eighth Amendment rights.[4]  *See* Am. Compl. at 24-26.  Plaintiff additionally asserts the following state-law claims: (1) medical malpractice against Defendants Balogh, Miles, Hays, and Noble (collectively, the "Medical Defendants"), *see id.* at 26-27; (2) intentional infliction of emotional distress against the Medical Defendants and Officers John Doe #1-10, *see id.* at 27; (3) negligent infliction of emotional distress against the Medical Defendants and Officers John Doe #1-10, *see id.* at 27-28; (4) negligent hiring, training, and retention of employment services against Defendants Allbaugh and Bear, *see id.* at 28-29; (5) wrongful death against all named Defendants, *see id.* at 29; and (6) negligence against all named Defendants, *see id.* at 30.

---

[3] Like "John Doe," "Richard Roe" is a fictitious designation.  *See* Am. Compl. at 5.  The record reflects that neither Defendant Roe nor the Defendant Officers John Doe #1-10 have been identified or served with process in this matter.  For purposes of this Order, the Court has considered only those claims raised against the moving Defendants.

[4] Though Plaintiff additionally cites the Fourth and Fourteenth Amendments in her pleading, the parties address only rights secured by the Eighth Amendment and made applicable to the States through the Fourteenth Amendment.  *See* Am. Compl. at 5, 25. Accordingly, the Court does not consider whether Plaintiff's claims plausibly state a violation of the Fourth Amendment or, additionally, a violation of the Fourteenth Amendment separate from the Eighth Amendment rights addressed by the parties.

In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## DISCUSSION

### I. Plaintiff's Federal Constitutional Claims

Plaintiff brings her federal claims pursuant to 42 U.S.C. § 1983, the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). To succeed on a claim under § 1983, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States," and that the violation "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see* 42 U.S.C. § 1983.

A. Official-Capacity Claims

As an initial matter, Defendants move to dismiss Plaintiff's § 1983 claims to the extent they seek money damages from each Defendant in his or her official capacity. *See* Defs.' Mot. at 7. Defendants cite Plaintiff's allegation in her Amended Complaint that "Defendants acted under pretense and color of state law and in their individual and official capacities." Am. Compl. at 25. Plaintiff responds that she is suing Defendants in their individual capacities only, as stated in paragraphs 8, 13, and 14 of the Amended Complaint. *See id.* at 3-5; Pl.'s Resp. at 23.

In view of Plaintiff's representations and of the specific assertions in the Amended Complaint that Defendants are sued in their individual capacities only, the Court finds that no official-capacity claims have been asserted and denies Defendants' request for dismissal of official-capacity claims on that ground.

B. Individual-Capacity Claims

Plaintiff asserts claims against each Defendant in his or her individual capacity.

1. *Applicable Standard*

In their Motion, Defendants assert the defense of qualified immunity. "Qualified immunity protects officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer

that his conduct was unlawful in the situation he confronted." *Stewart v. Beach*, 701 F.3d 1322, 1330 (10th Cir. 2012) (internal quotation marks omitted).

"[A] case directly on point" is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). For a right to be clearly established there must be either controlling authority (i.e., a Supreme Court or published Tenth Circuit decision) or "a robust consensus of cases of persuasive authority" from other courts that "ha[s] found the law to be as the plaintiff maintains." *al-Kidd*, 563 U.S. at 741-42 (internal quotation marks omitted); *Sanchez v. Labate*, 564 F. App'x 371, 373 (10th Cir. 2014) (internal quotation marks omitted); *see Apodaca v. Raemisch*, 864 F.3d 1071, 1076 & n.3 (10th Cir. 2017). "[T]he right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle v. Houston*, 566 U.S. 658, 665 (2012) (citations and internal quotation marks omitted).

While a defendant may assert the defense of qualified immunity in a motion to dismiss, doing so "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted). "At [the motion to dismiss] stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996). "In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time

of defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted); *see Robbins*, 519 F.3d at 1249.

In the present case, the constitutional right at issue derives from the Eighth Amendment, which imposes upon the government an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *see also West*, 487 U.S. at 56. "[S]ociety does not expect that prisoners will have unqualified access to health care," however. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A violation of the Eighth Amendment will be found only if the prisoner shows that he or she suffered "acts or omissions sufficiently harmful to evidence deliberate indifference to [the prisoner's] serious medical needs." *Estelle*, 429 U.S. at 106. The Tenth Circuit has recognized "two types of conduct which may constitute deliberate indifference in a prison medical case: (1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006).

"The test for constitutional liability of prison officials involves both an objective and a subjective component." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks omitted). The objective component is met if "the deprivation at issue was . . . 'sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks omitted).

"The subjective component is satisfied if the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference.'" *Id.* (alteration omitted) (quoting *Farmer*, 511 U.S. at 837).

### 2. *The Medical Defendants*

Defendants argue that Plaintiff's factual allegations fail to plausibly show that any Defendant was deliberately indifferent to a serious medical need. *See* Defs.' Mot. at 9-12. The Court addresses the claims against each Medical Defendant pursuant to the following chronology of allegations:

- **May 22, 2018**: England submitted a sick call request to the prison health clinic, reporting that he was experiencing severe abdominal pain, that he had been vomiting all night, and that he appeared to have vomited blood. England was seen by Defendant Hays that same day. He described his pain level to Defendant Hays as an "8" on a ten-point scale. Though Defendant Hays noted that England was holding his abdomen during the appointment, she did not conduct a complete abdominal exam. Defendant Hays gave England Pepto-Bismol and told him to return in three days if the pain did not subside. *See* Am. Compl. at 6-7.

- **May 23, 2018**: England submitted a second sick call request, noting that his stomach pain was so extreme that he could "barely breath[e]" and couldn't eat. England was seen by Defendants Hays and Miles. He informed them that his pain level was a "10" and that there was blood in his stool. England's pulse was elevated at 102 beats per minute, well above the 61 beats per minute recorded at England's clinic visit the day before. Defendants Hays and Miles gave England magnesium citrate and a laxative but did not conduct a complete abdominal exam or refer England to a physician. England submitted a third sick call request that same day, in which he wrote, "My stomach hurts so bad I can't puke & poop the pain goes into my groin[;] it's hard to breath[e] & sleep[.] I can't eat[,] that makes the pain worse." Defendant Hays refused to see England despite this sick call request. She wrote in response the next day, "[Y]ou were seen on 5/23/18." England reported to other prisoners that medical professionals at the clinic were making fun of him and not taking his complaints seriously. *See id.* at 8-10.

- **May 26, 2018**: England's fourth sick call request again identified extreme stomach pain and difficulty breathing. England additionally wrote that he could not lie down due to the pain. Defendants Noble and Miles saw England in the clinic that day. England had an elevated pulse and reported his pain level as a "9." Defendants Noble and Miles did not perform a complete abdominal exam and inaccurately wrote in England's medical chart that he only had been experiencing his symptoms for two days. Defendant Balogh was notified telephonically of England's condition[5] and ordered that England be given Ibuprofen, drink lots of fluids, and eat fibrous foods. *See id.* at 10-11.

- **May 29, 2018**: England submitted a fifth sick call, noting that he was short of breath and that his stomach hurt. He had lost twelve pounds. At the clinic, medical staff performed an electrocardiogram (EKG), which recorded England's heart rate at 158 beats per minute, which "should have alerted clinic staff that [England] was facing a dire medical emergency and that he needed life-saving intervention at a hospital immediately." Yet, England's complaints were "ignore[d]." England was instructed to "sit and wait at the clinic longer to see the provider," but England instead returned to his cell due to the pain he was experiencing. Defendant Hays notified Defendant Miles of England's visit to the clinic, but a physician was not called. Defendant Hays, among other JHCC employees, went to England's cell. England told them that he could not walk back to the clinic. He was delirious and "saying things that didn't make sense, making sounds, and appeared to be imagining things." Certain ODOC employees recorded a video of England dying in his cell to document his refusal of medical care. Defendant Hays forced England to sign a Waiver of Treatment/Evaluation form. England died at 4:43 p.m. of what was later determined to be a ruptured appendix with acute peritonitis. Around 8:00 p.m., Defendant Hays wrote in England's chart regarding his visit to the clinic earlier that day, stating that England's vital signs had been within normal limits except for his heart rate and "Resp[iratory]." Defendant Hays falsely wrote that England had been in no or little to no distress when she left him in his cell that morning. *See id.* at 12-19.

First, the Court finds that Plaintiff has plausibly pled the objective component of England's Eighth Amendment claim. As the Tenth Circuit has explained, "it is the harm claimed by the prisoner that must be sufficiently serious to satisfy the objective component, and not solely 'the symptoms presented at the time the prison employee has contact with

---

[5] Plaintiff does not specify who contacted Defendant Balogh regarding England's condition.

the prisoner.'" *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Mata*, 427 F.3d at 753). Plaintiff alleges harm in the form of England's severe pain and suffering imposed from the delay in treatment of his appendicitis and the harm of England's ultimate death. Death unquestionably is sufficiently serious to satisfy the objective component. *See id.* (finding heart attack and death sufficiently serious). And while "not every twinge of pain suffered as the result of delay in medical care is actionable," the Court determines Plaintiff's allegations that England suffered days of prolonged pain so extreme that he could not sleep, eat, or lie down also satisfy Plaintiff's burden to plausibly allege sufficiently serious harm. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000); *see Mata*, 427 F.3d at 753 (finding that the plaintiff's "severe chest pain and her heart attack each [was] sufficiently serious to satisfy the objective prong").

Second, the Court considers whether Plaintiff has plausibly alleged that the Medical Defendants acted with subjective deliberate indifference. Unlike the inquiry for the objective prong, the Court considers whether "the symptoms displayed to the prison employee" were "such that [the] prison employee knew the risk to the prisoner and chose (recklessly) to disregard it." *Mata*, 427 F.3d at 753; *see also Self*, 439 F.3d at 1233 (explaining that the "subjective inquiry is limited to consideration of the [medical professional's] knowledge at the time he prescribed treatment for the symptoms presented, not to the ultimate treatment necessary").

a. Defendant Noble

Plaintiff's allegations against Defendant Noble include that this Defendant and Defendant Miles failed to perform a complete abdominal exam on May 26, 2018, despite

England's report of "level 9" stomach pain and difficulty breathing and lying down, and that Defendant Noble and Defendant Miles inaccurately wrote that England had been experiencing pain for two days, though England first presented at the clinic with his symptoms four days earlier. Plaintiff additionally alleges that the failure to contact emergency services or inform the facility medical provider when confronted with England's symptoms violated ODOC policies in effect at the time. *See* Am. Compl. at 14-15.

Viewing Plaintiff's allegations in the light most favorable to her, the Court finds that Plaintiff has alleged facts that are sufficient to plausibly show that Defendant Noble acted with subjective deliberate indifference. *See Mata*, 427 F.3d at 758 (distinguishing a nurse's "simpl[e] misdiagnos[is]" from circumstances in which a nurse "completely refused to assess or diagnose [the prisoner's] medical condition at all" or "fulfill her duty as gatekeeper in a potential cardiac emergency" and ODOC protocol was presented as "circumstantial evidence of [the nurse's] knowledge of the seriousness of [severe chest] pain").

### b. Defendant Hays

Plaintiff alleges that on the day of England's death Defendant Hays failed to contact emergency services despite her knowledge that England had been experiencing extreme abdominal pain and difficulty breathing for several days, that England was in too much pain to walk back to the clinic for medical assistance, and that ODOC policies required nurses to contact emergency services in similar circumstances. Instead, says Plaintiff, Defendant Hays coerced England to sign a waiver of treatment. These allegations plausibly

show that Defendant Hays "knew of and disregarded the excessive risk to [England's] health." *Sealock*, 218 F.3d at 1210 (reversing summary judgment entered in favor of medical professional who had "observed [the plaintiff] at a time when he was very pale, sweating and had been vomiting," had heard that the plaintiff "might be having a heart attack," and yet had "refused to transport [the plaintiff] immediately to a doctor or a hospital").

c.  Defendant Miles

According to Plaintiff, Defendant Miles saw England during his May 23rd and May 26th clinic visits.  England reported abdominal pain levels of nine and ten, blood in his stool, and difficulty breathing, eating, and lying down.  Defendant Miles did not perform a complete abdominal exam on either occasion.  During the May 23rd clinic visit, he prescribed magnesium citrate and a laxative.  Though Plaintiff acknowledges that Defendant Balogh was notified of England's condition on May 26, her pleading does not specify whether Defendant Miles was the individual who contacted him.  Plaintiff does contend that Defendant Miles—at some point—"failed to immediately notify the facility physician," in contravention of ODOC policy, "when [England] told [Defendant Miles] he couldn't breath[e] and that he was experiencing serious pain in his stomach."  Am. Compl. at 14.  Viewing the allegations in the light most favorable to Plaintiff, the Court determines that Plaintiff has plausibly pled that Defendant Miles was deliberately indifferent to England's serious medical need.  *See Self*, 439 F.3d at 1232 (noting that "a jury may infer conscious disregard" if a medical professional "responds to an obvious risk with treatment

that is patently unreasonable" or declines or unnecessarily delays referral despite recognizing his or her inability to treat the patient).

### d. Defendant Balogh

Plaintiff alleges that Defendant Balogh, despite being notified on May 26, 2018, of England's condition, merely prescribed Ibuprofen, fluids, and fibrous foods and did not examine England in person. *See* Am. Compl. at 11. Drawing reasonable inferences in Plaintiff's favor, her pleading reflects that Defendant Balogh was aware of all aspects of England's symptoms, as well as their severity, yet failed to conduct further examination or refer Plaintiff for examination or care by another. While a mere "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation," a claim may be actionable if the medical professional fails to treat an obvious medical condition or "completely denies care although presented with recognizable symptoms which potentially create a medical emergency." *Self*, 439 F.3d at 1232-33 (internal quotation marks omitted). Because Plaintiff plausibly alleges that England's symptoms made "the need for additional treatment or referral to a medical specialist . . . obvious," and that Dr. Balogh was aware of these symptoms, the Court finds that Defendant Balogh's deliberate indifference was plausibly pled and that the claim against him should proceed. *Self*, 439 F.3d at 1231-32 (explaining that "[t]he fact that a serious medical need was 'obvious' could be evidence of deliberate indifference, although a prison official may show that the obvious escaped him and avoid liability" (internal quotation marks omitted)).

### 3. Defendants Allbaugh and Bear

Plaintiff bases her individual-capacity claims against Defendants Allbaugh and Bear on supervisory liability. "Section 1983 does not authorize respondeat superior liability for a supervisor based solely on the actions of his subordinates." *Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008). Rather, the plaintiff must establish an "'affirmative link' between the supervisor and the constitutional violation." *Schneider v. City of Grand Junction Police Dep't,* 717 F.3d 760, 767 (10th Cir. 2013); *see Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

To demonstrate such an "affirmative link," a plaintiff must establish: (1) personal involvement[,] (2) causation, and (3) state of mind." *Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018) (internal quotation marks omitted). A plaintiff may demonstrate personal involvement "by establishing the supervisor promulgated, created, implemented, or possessed responsibility for the continued operation of a policy," or "the establishment or utilization of an unconstitutional policy or custom," "provided the policy or custom resulted in a violation of the plaintiff's constitutional rights." *Burke*, 935 F.3d at 997 (alterations, citations, and internal question marks omitted). The second element, causation, requires a showing that "the defendant's alleged action(s) caused the constitutional violation by setting in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her

constitutional rights." *Id.* (internal quotation marks omitted). To establish the third element for an Eighth Amendment medical-treatment claim, the plaintiff must show that the supervisor-defendant "acted with deliberate indifference"—i.e., he "disregarded a known or obvious consequence of his action." *Id.* (internal quotation marks omitted); *see also id.* at 997-98 (noting that a policymaker is deliberately indifferent "when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost invariably result in constitutional injury of the type experienced by the plaintiff" (internal quotation marks omitted)).

Defendants argue that Plaintiff fails to state a claim for supervisory liability against Defendants Allbaugh and Bear because "neither . . . was responsible for providing or supervising medical care for inmates." Defs.' Mot. at 8. In support, Defendants cite a version of an ODOC policy that provides that the administration of ODOC's medical services program falls under the purview of ODOC's chief medical officer. *See id.* As the Court's inquiry on a Rule 12(b)(6) motion is limited to the well-pleaded allegations of Plaintiff's pleading, Defendants' reference to this ODOC policy cannot serve to support a showing that Plaintiff failed to state a plausible claim for relief. *See* Am. Compl. at 2-3 (alleging that Defendants Allbaugh and Bear were responsible for the supervision of JHCC staff and the "creation, promulgation, implementation, and oversight of policies and programs governing on-site medical treatment of inmates" at JHCC during the relevant time period).

Defendants next broadly argue that Plaintiff "fails to set forth any other allegation directly linking Defendant[] Allbaugh or [Defendant] Bear" to the alleged constitutional

violation. Defs.' Mot. at 9. Defendants do not specifically address, however, the multiple specific allegations Plaintiff raises against these Defendants or provide argument illustrating that these allegations fail to satisfy the federal pleading standard.

Plaintiff predicates her Eighth Amendment claim against Defendants Allbaugh and Bear on allegations that they "improperly hir[ed], supervis[ed], and retain[ed] Defendants Balogh and Miles on staff." Am. Compl. at 21; *see id.* at 25. Specifically, Plaintiff asserts that Defendants Allbaugh and Bear "knew that the medical care at [JHCC] prior to and including the time of [England's] mistreatment and death was overseen by a doctor who never examined him and had a history of drug abuse [i.e., Defendant Balogh] and a physician's assistant who had his own past with drug addiction [i.e., Defendant Miles]. They failed to adequately supervise the Medical Defendants' care of inmates, and failed to hire qualified, competent, and proficient medical providers to treat inmates like [England]." *Id.* at 20, 25. Plaintiff continues, "Their failure to take measures to curb this neglect constituted acquiescence in the known unlawful behavior of their subordinates and deliberate indifference to the rights and safety of . . . [England]." *Id.*

In addition, Plaintiff asserts that Defendants Allbaugh and Bear "failed to promulgate, implement, and/or enforce" certain "policies or procedures," including, (1) policies or procedures "requiring medical staff . . . to immediately inform a physician and/or refer an inmate to a hospital when an inmate presented complaints about difficulty breathing or acute stomach pain, and/or showed obvious signs of medical distress"; (2) policies or procedures "requir[ing] physicians . . . to conduct an in-person examination of a critically ill patient or arrange for their immediate transfer to a facility where such a

physician's examination was available"; and (3) policies or procedures "regarding informed and voluntary choices by inmates seeking medical care, or the conditions under which an inmate lacks capacity to 'refuse' medical treatment, or which forbid staff to attempt to secure an inmate's waiver of treatment when the inmate was not capable of intelligently, knowingly, and voluntarily waiving treatment in an emergency situation." *Id.* at 15, 17-18; *see also id.* at 21, 25.

Regarding the causation and state-of-mind components, Plaintiff alleges that the inadequacies in medical policies and medical staff caused England's death and that Defendants Allbaugh and Bear "were aware of the grossly deficient medical care provided to inmates at [JHCC] but took no steps to correct it or to hire appropriate medical providers." Am. Compl. at 21. Further, Plaintiff alleges that Defendants Allbaugh and Bear "were aware that the policies and procedures they created, promulgated, implemented, and/or enforce[d]—or failed to create, promulgate, implement, or enforce— resulted in grossly deficient medical care to inmates at [JHCC]." *Id.*

The Court finds Plaintiff's allegations sufficient, when viewed collectively and in Plaintiff's favor, to state a plausible claim for relief against Defendants Allbaugh and Bear. *See, e.g.*, *Burke*, 935 F.3d at 1000 (noting that "evidence that [the supervisor-defendant] neglected to remedy deficient medical care would permit a reasonable jury to find he was deliberately indifferent to the risk that poor care would result in [the plaintiff's] constitutional injury").

### 4. Clearly Established Right

As of May 2018, it was clearly established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (citation omitted). Controlling authority has further defined the parameters of this right to include the conduct alleged in Plaintiff's pleading, namely, "a medical professional['s] fail[ure] to treat [an inmate's] serious medical condition properly" and "a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition." *Self*, 439 F.3d at 1231; *see Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) ("The right to custodial medical care is clearly established."); *Mata*, 427 F.3d at 749 ("[T]here is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right."); *see also Al-Turki v. Robinson*, 762 F.3d 1188, 1194-95 (10th Cir. 2014) (finding that defendant violated clearly established law in 2008 "by choosing to ignore [the plaintiff's] repeated complaints of severe abdominal pain and requests for medical assistance, thus completely denying him any medical care although presented with recognizable symptoms which potentially created a medical emergency" (alteration and internal quotation marks omitted)).

### 5. Summary

For the reasons set forth above, the Court finds that dismissal of Plaintiff's individual-capacity claims is not warranted.[6] *See generally* James W. Moore, 2 *Moore's Federal Practice* § 12.34[4][b] (3d ed. 2019) (noting that establishment of the defense of qualified immunity ordinarily requires factual review and should not support dismissal for failure to state a claim).

### II. Plaintiff's State-Law Claims

#### A. Medical Malpractice; Negligence; Negligent Infliction of Emotional Distress; and Negligent Hiring, Training, or Retention of Employment Services

In their Motion, Defendants argue that Plaintiff's tort claims of medical malpractice, negligence, negligent infliction of emotional distress, and negligent hiring, training, or retention of employment services are barred by the Oklahoma Governmental Tort Claims Act ("OGTCA"), Okla. Stat. tit. 51, §§ 151 et seq., because Plaintiff failed to alleged facts plausibly showing that Defendants were acting outside the scope of their employment as to the conduct Plaintiff alleged to be tortious. *See* Defs.' Mot. at 2-5.

The OGTCA provides "the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort" under Oklahoma law. *Tuffy's, Inc. v. City of Okla.*

---

[6] This finding "does not foreclose Defendants from reasserting their entitlement to qualified immunity on a motion for summary judgment should [Plaintiff's] allegations in the complaint prove to be unfounded." *Seamons v. Snow*, 84 F.3d 1226, 1238 (10th Cir. 1996) (reversing a grant of qualified immunity on a motion to dismiss where it was "premature, absent a factual record"). The Court makes no finding at this stage as to whether Defendants will be able to show entitlement to qualified immunity when Plaintiff "can no longer rest on the pleadings." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted).

*City*, 212 P.3d 1158, 1163 (Okla. 2009); *see, e.g.*, Okla. Stat. tit. 51, § 153(B). The OGTCA generally immunizes individual state employees from liability for torts committed "within the scope of their employment." Okla. Stat. tit. 51, § 152.1(A); *see id.* § 163(C); *Crouch v. Daley*, 581 F. App'x 701, 705 (10th Cir. 2014) (holding that state employee acting within scope of employment is immune from tort liability under OGTCA and responsibility for any loss incurred because of that employee's torts shifts to political subdivision). Under the OGTCA, the term "scope of employment" is defined as "performance by an employee *acting in good faith* within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority." Okla. Stat. tit. 51, § 152(12) (emphasis added). Thus, "[a]n act of the employee is not in the scope of employment if the employee acted maliciously or in bad faith." *Pellegrino v. State ex rel. Cameron Univ.*, 63 P.3d 535, 537 (Okla. 2003). "Except in cases where only one reasonable conclusion can be drawn, the question of whether an employee has acted within the scope of employment at any given time is a question for the trier of fact." *Tuffy's, Inc.*, 212 P.3d at 1163; *see Nail v. City of Henryetta*, 911 P.2d 914, 918 (Okla. 1996).

Plaintiff alleged a lack of good faith as to each of the above-referenced tort claims. *See* Am. Compl. at 26 ("In committing [the acts giving rise to the medical malpractice claim], the Medical Defendants failed to act in good faith in carrying out the duties of their employment and abused their power."), 28 ("The Officer and Medical Defendants abused their power and failed to perform their employment duties in good faith" when committing acts giving rise to England's negligent infliction of emotional distress claim), 29 ("The Senior Defendants abused their power and failed to perform their employment duties in

good faith," when committing acts giving rise to England's negligent hiring, training, and retention of employment services claim), 30 ("Defendants abused their power and failed to perform their duties in good faith" when committing acts giving rise to Plaintiff's negligence claim.).

Defendants argue that their "alleged misjudgment of the seriousness of England's medical condition is not suggestive of a failure to act in good faith," and that "there is no indication that [Defendants] were not attempting to further their employer's interests in housing and providing medical care to state inmates." Defs.' Mot. at 5. This contention, without more, is insufficient to show that Plaintiff has failed to plead facts specific to each Defendant that give rise to a plausible inference of bad faith. As discussed in relation to Plaintiff's constitutional claim, Plaintiff has plausibly alleged that the Defendants' conduct exceeded mere misjudgment. Moreover, this Court has repeatedly noted that "while [the scope-of-employment] issue may be adjudicated upon consideration of a summary judgment motion, it cannot properly be determined in a motion to dismiss." *Pendergraft v. Bd. of Regents of Okla. Colls.*, No. CV-18-793-D, 2019 WL 3806639, at *6 (W.D. Okla. Aug. 13, 2019) (internal quotation marks omitted); *accord Tilghman v. Kirby*, No. CIV-13-73-D, 2013 WL 6092529, at *3 (W.D. Okla. Nov. 19, 2013).

Accordingly, Defendants' request for dismissal of these tort claims for failure to state a plausible claim for relief is denied.

B. Intentional Infliction of Emotional Distress

Finally, Defendants argue that Plaintiff's claim of intentional infliction of emotional distress against the Medical Defendants "must fail" because "Defendants were acting in

good faith and within the course and scope of their employment at all times relevant." Defs.' Mot. at 6. Plaintiff responds that she has plausibly alleged bad faith in relation to this claim. *See* Pl.'s Resp. at 18-19.

Oklahoma recognizes the tort of intentional infliction of emotional distress as "governed by the narrow standards of the Restatement (Second) of Torts § 46." *Comput. Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). Recovery is permitted only for "extreme and outrageous conduct coupled with severe emotional distress." *Id.* To prevail, a plaintiff must establish that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Id.*

In her pleading, Plaintiff specifically alleges that the Medical Defendants "engaged in extreme and outrageous conduct intentionally and recklessly causing severe emotional distress to [England]" and that they "abused their power and failed to perform their employment duties in good faith." Am. Compl. at 27. Plaintiff additionally alleges that England was "distraught" and "in tears on at least one occasion" and that he made repeated pleas for medical assistance that the Medical Defendants handled with deliberate indifference. *Id.* at 10, 13.

The Court finds that Defendants' cursory challenge does not illustrate that Plaintiff has failed to state a plausible claim for relief against each Medical Defendant for intentional infliction of emotional distress. *See Comput. Publ'ns, Inc*, 49 P.3d at 735; *Gowens v. Barstow*, 364 P.3d 644, 652 (Okla. 2015) (noting that it may be possible to infer bad faith "from conduct exhibiting reckless disregard for the rights of others"); *Estate of Trentadue*

*ex rel. Aguilar v. United States*, 397 F.3d 840, 856 (10th Cir. 2005) (noting that in Oklahoma, the "recklessness" element of a claim for intentional infliction of emotional distress "includes actions that are in deliberate disregard of a high degree of probability that the emotional distress will follow" (internal quotation marks omitted)); *cf. Self*, 439 F.3d at 1231 (explaining that the subjective component of a deliberate indifference claim is "akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm" (internal quotation marks omitted)). Viewing the full scope of Plaintiff's well-pleaded allegations in the light most favorable to her, the Court finds sufficient facts to allow the claim to proceed. The Court notes that the "nature and specificity of the allegations required to state a plausible claim will vary based on context," and Plaintiff's intentional infliction of emotional distress claim is not particularly complex. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011); *see also Twombly*, 550 U.S. at 556 (explaining that the plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the alleged wrongdoing).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 21) is DENIED.[7]

---

[7] The Court DENIES Plaintiff's Motions to Conduct Discovery Pursuant to LCvR 26.3 (Doc. Nos. 29, 40) as moot. The Court further finds that Plaintiff has shown good cause for her failure to serve Defendants Oklahoma Department of Corrections Officers John Does #1-10 and Defendant Case Manager Richard Roe, *see* Doc. Nos. 34, 35, and hereby EXTENDS Plaintiff's deadline to effect service on these defendants to May 25, 2020. *See* Fed. R. Civ. P. 4(m).

IT IS SO ORDERED this 24th day of February, 2020.

CHARLES B. GOODWIN
United States District Judge