**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 10, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

_____

CHRISTINA SMITH, individually and as next friend of her son, Joshua England,

    Plaintiff - Appellee,

v.

JOE ALLBAUGH; CARL BEAR,

    Defendants - Appellants,

and

ROBERT BALOGH; WENDELL MILES; LAURA HAYS; LAURA NOBLE; OKLAHOMA DEPARTMENT OF CORRECTIONS OFFICERS JOHN DOES #1-10; RICHARD ROE, Case Manager,

    Defendants.

No. 20-6029

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:19-CV-00470-G)**

_____

Devan A. Pederson (and Kari Y. Hawkins, Assistant Attorney General, Litigation Division of Oklahoma Attorney General's Office, with him on the briefs), Oklahoma City, Oklahoma, for Defendants-Appellants.

Katherine Rosenfeld (and Emma L. Freeman of Emery, Celli, Brinckerhoff & Abady, LLP, New York, New York; Henry A. Meyer, III of Mulinix, Goerke & Meyer, PLLC, Oklahoma City, Oklahoma; Paul DeMuro of Frederic, Dorwart, Lawyers, PLLC, Tulsa, Oklahoma, with her on the brief), for Plaintiff-Appellee.

_____

Before **HARTZ**, **KELLY**, and **PHILLIPS**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

Defendants-Appellants Joe Allbaugh, the Director of the Department of Corrections at the time this claim arose, and Carl Bear, the Warden of Joseph Harp Correctional Center (collectively, Defendants) appeal from the district court's order denying their motion to dismiss on grounds of qualified immunity. Smith v. Allbaugh, No. CIV-19-470-G, 2020 WL 889165 (W.D. Okla. Feb. 24, 2020). Defendants also challenge Plaintiff-Appellee Christina Smith's standing in this case. Exercising jurisdiction under 28 U.S.C. § 1291 based upon the denial of qualified immunity, Mitchell v. Forsyth, 472 U.S. 511, 530 (1985), we reverse.

## Background

Ms. Smith is the mother of Joshua England. Aplt. App. 39. Her claims arise from the death of Mr. England from a ruptured appendix in May 2018, while Mr. England was housed at the Joseph Harp Correctional Center (JHCC), an Oklahoma Department of Corrections (ODOC) facility in Lexington, Oklahoma. Aplt. App 40–43.

**A. Mr. England's course of treatment**

Mr. England was a 21-year-old prisoner at JHCC who was a few months away from release. On May 22, he submitted a sick call request to the prison health clinic, complaining of severe abdominal pain and bloody vomit. He was treated with Pepto-Bismol and told to return if the pain did not subside. The nurse did not examine Mr.

2

England's abdomen.  On May 23, Mr. England submitted a second sick call request, complaining of pain so severe that he could barely breath and could not eat.  He also reported bloody stool and presented with an elevated pulse and blood pressure.  He was seen by the prison's physician assistant (PA) and nurse.  He was given magnesium citrate (a laxative) and was sent away without an abdominal examination or a referral to a physician.  Mr. England submitted a third sick call request that same day, complaining of intense pain, but the nurse refused to see him.

On May 26, Mr. England submitted a fourth sick call request, again identifying extreme stomach pain and difficulty breathing.  Mr. England complained that he could not lie down due to the pain.  Mr. England saw the PA and nurse at the prison health clinic and presented with an elevated pulse and reported a pain level of nine out of ten.  The nurse and PA did not give Mr. England a complete abdominal examination and inaccurately wrote in Mr. England's medical chart that he only had been experiencing his symptoms for two days.  The ODOC physician was notified of Mr. England's condition and ordered that Mr. England be given Ibuprofen, drink lots of fluids, and eat fibrous foods.

On May 29, Mr. England submitted a fifth sick call request, noting that he was short of breath and that his stomach hurt.  He had also lost twelve pounds in less than two weeks.  Mr. England's heart rate was recorded at 158 beats per minute.  Mr. England was instructed to wait at the clinic to see a provider, but Mr. England returned to his cell as he was unable to bear the pain while waiting.  The nurse and other JHCC employees went to Mr. England's cell, but Mr. England told them that he

could not walk back to the clinic. Mr. England was delirious at this point. The nurse forced Mr. England to sign a Waiver of Treatment/Evaluation form. Mr. England died in his cell that afternoon from a ruptured appendix with acute peritonitis.

### B. Procedural History

Ms. Smith filed suit "individually and as next friend of her son, Joshua England" on May 24, 2019. Aplt. App. 13. Ms. Smith asserted § 1983 claims against Defendants as well as other state-law claims. Aplt. App. 62–68. Ms. Smith alleged supervisory liability based on theories of a failure to promulgate, implement or enforce certain medical care policies, and a failure to hire qualified medical providers and supervise them. Aplee. Br. at 2; Aplt. App. 52–53, 62–63. On July 9, 2019, Defendants moved to dismiss, asserting a variety of defenses including qualified immunity on the federal claims. Aplt. App. 71–85. The district court denied Defendants' motion to dismiss in the entirety, holding that Defendants were not entitled to qualified immunity. Aplt. App. 114–136. The district court held that Ms. Smith sufficiently pleaded deliberate indifference to serious medical needs, supervisory liability on the part of Defendants, and that the law was clearly established. Smith, 2020 WL 889165 at *6–8.

Ms. Smith was not appointed Personal Representative of Mr. England's Estate until May 22, 2020. Aplee. Br. 9. On May 29, 2020, Plaintiff filed a motion to amend the complaint pursuant to Fed. R. Civ. P. 15 and substitute herself in that capacity as the real party in interest pursuant to Fed. R. Civ. P. 17(a)(3). That motion is pending.

**Discussion**

"We review the district court's denial of a motion to dismiss based on qualified immunity de novo, accepting as true all well-pleaded factual allegations in the complaint and viewing the allegations in the light most favorable to the non-moving party." A.N. by & through Ponder v. Syling, 928 F.3d 1191, 1196 (10th Cir. 2019) (citation omitted).

### A. Subject Matter Jurisdiction

The district court had jurisdiction over this action. On appeal, Defendants argue that the district court lacked jurisdiction over this action because Ms. Smith was not the legal administrator of Mr. England's estate when she filed her initial complaint. Aplt. Br. 29–30. But this is a question of who is the real party in interest, rather than a jurisdictional issue. See First Am. Title Ins. Co. v. Nw. Title Ins. Agency, 906 F.3d 884, 890 (10th Cir. 2018). And Ms. Smith was certainly a proper plaintiff. "Federal courts are to apply state law in deciding who may bring a § 1983 action on a decedent's behalf." Williams v. Bradshaw, 459 F.3d 846, 848 (8th Cir. 2006); see also Pope v. Ward, No. 95-7129, 1996 WL 460023, *1 (10th Cir. Aug. 14, 1996) (unpublished); 42 U.S.C. § 1988(a). Under Oklahoma state law, a decedent's next of kin may bring a wrongful death action, even if that person has not yet been appointed personal representative. Okla. Stat. tit. 12, §§ 1053–54. It is undisputed that Ms. Smith is Mr. England's next of kin.

Defendants argue that Ms. Smith filed suit as "next friend" of Mr. England, instead of "next of kin." Aplt. Reply Br. 3. However, if (as is doubtful) the

5

description of her status was defective, that can be readily cured. See Fed. R. Civ. P. 17(a)(3).

### B. Constitutional Violation

A public official or employee is entitled to qualified immunity unless "clearly established" federal rights of which a reasonable person would have known are shown to have been violated. Hunter v. Bryant, 502 U.S. 224, 227 (1991). Once a defendant asserts the defense of qualified immunity, the plaintiff must demonstrate that "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." Morris v. Noe, 672 F.3d 1185, 1191 (10th Cir. 2012) (citation omitted).

Ms. Smith alleged that Defendants violated Mr. England's Eighth and Fourteenth Amendment constitutional rights based on two theories of supervisory liability: (1) failure to implement/promulgate sufficient policies and procedures that would have prevented the constitutional violations at issue, Aplt. App. 52–53; and (2) failure to hire and supervise qualified JHCC medical staff, Aplt. App. 62–63. Both theories rely on Ms. Smith's underlying allegations of constitutional violations committed by the JHCC medical staff for deliberate indifference to Mr. England's medical needs. Aplt. App. 62–63. Defendants argue that Ms. Smith failed to state a claim for the underlying deliberate indifference claim, as well as for supervisory liability. Aplt. Br. 9–17.

6

### a. Underlying Deliberate Indifference Claim

Ms. Smith stated a claim for deliberate indifference to Mr. England's medical needs. Under the Eighth Amendment,[1] "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). This includes a constitutional right to be free from "deliberate indifference to an inmate's serious medical need." Mata v. Saiz, 427 F.3d 745, 749 (10th Cir. 2005). To establish deliberate indifference based on prison officials failing to attend to an inmate's serious medical needs, a plaintiff must satisfy an objective and subjective component. See id. at 751. Under the objective component, the deprivation must be "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (citation omitted). Under the subjective component, the prison official must have acted with a culpable state of mind, namely "deliberate indifference." Id. To establish a culpable state of mind, Ms. Smith must show that the JHCC medical staff "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Id. (citation omitted). Defendants do not contest that Mr. England's medical condition

---

[1] Section 1983 claims made under the Fourteenth Amendment for deliberate indifference are evaluated under the same standard as section 1983 claims made under the Eighth Amendment for deliberate indifference. See Quintana v. Santa Fe Cty. Bd. of Commissioners, 973 F.3d 1022, 1028 (10th Cir. 2020).

was sufficiently serious to satisfy the objective component of a § 1983 deliberate indifference claim.

Ms. Smith plausibly alleged that the JHCC medical staff was deliberately indifferent to serious medical needs. Mr. England made five sick call requests, each time complaining of severe pain and physical symptoms such as bloody vomit and stool and difficulty breathing. Further, the medical staff recorded physical symptoms in their examination, noting that Mr. England lost twelve pounds within two weeks, that Mr. England had an elevated heartrate, and even that he faced "possible death" a few hours before he died. Aplt. App. 51, 54. Ms. Smith has plausibly pled that the JHCC medical staff demonstrated deliberate indifference when they failed to perform a complete abdominal exam despite Mr. England's complaints of severe stomach pain, when they failed to follow ODOC policies by failing to contact emergency services, and when they coerced Mr. England to sign a waiver despite his physical symptoms. Aplt. App. 45, 47, 49, 52–54.

Defendants argue that the JHCC medical staff was not deliberately indifferent because they merely misdiagnosed him, which does not rise to the level of deliberate indifference. Aplt. Br. 20. Defendants argue that Ms. Smith's differing opinion as to the course of treatment the medical staff chose for Mr. England is insufficient to support a claim for an Eighth Amendment violation. Aplt. Br. 21. However, Ms. Smith's allegations do not amount to a differing opinion as to the course of treatment, but a claim that JHCC medical staff "respond[ed] to an obvious risk with treatment that is patently unreasonable." Self v. Crum, 439 F.3d 1227, 1232 (10th Cir. 2006).

Indeed, Ms. Smith alleges that Mr. England presented with severe symptoms, but that the medical staff prescribed woefully inadequate treatment in the form of Pepto-Bismol, a laxative, Ibuprofen, and fibrous foods.

### b. Supervisory Liability Claims

#### i. Failure to Implement/Promulgate Sufficient Policies and Procedures Claim

We disagree with the district court that Ms. Smith sufficiently alleged claims for a failure to implement/promulgate sufficient policies and procedures to prevent the constitutional violation at issue here. To plead supervisory liability against the Defendants for failure to implement/promulgate sufficient policies and procedures that would have prevented the constitutional violation at issue here, Ms. Smith must allege that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Brown v. Montoya, 662 F.3d 1152, 1163–64 (10th Cir. 2011) (citation omitted). Further, plaintiff must plead facts sufficient to support such a claim and may not stand on mere conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Ms. Smith fails to assert sufficient facts to support a causal link between Defendants' actions and the constitutional violation. Ms. Smith asserts five policies and procedures that Defendants failed to promulgate or enforce. She pleads two policies that Defendants failed to "enforce": (1) a policy requiring facility nurses and

9

staff to immediately inform the facility medical provider when facing complaints of difficulty breathing or complaints relating to the abdomen; and (2) a policy requiring facility nurses and staff to immediately contact emergency services if an inmate complained of severe difficulty breathing or experienced a sudden onset of altered medical status. Aplee. Br. 18. However, Ms. Smith only alleges that JHCC medical staff failed to follow such procedures, Aplt. App. 52–53, not that Defendants failed to enforce these policies. Indeed, Ms. Smith fails to plead any facts tending to show that Defendants were aware of prior instances of these policies not being followed and that they failed to rectify those situations.

Ms. Smith further pleads that Defendants failed to "promulgate, implement, and/or enforce policies" (1) "requiring medical staff to inform a physician and/or refer an inmate to a hospital when an inmate complained of difficulty breathing, experienced acute stomach pain, or showed obvious signs of medical distress;" (2) "requiring a facility physician to conduct an in-person examination of a critically ill patient or arrange for their transfer to a facility where a physician's examination was available;" and (3) "regarding necessary protocols when an inmate lacks capacity to refuse medical treatment." Aplee. Br. 18. However, the first two policies are the same policies that Ms. Smith argues should have been enforced above. As for the final policy, Ms. Smith attaches a copy of the Waiver of Treatment/Evaluation Form in the complaint that states protocols that must be followed by the medical staff when completing the form. Aplt. App. 55. Again, while the medical staff may not have followed the protocol, Ms. Smith fails to allege facts that Defendants knowingly

10

failed to enforce the policy and therefore fails to assert a causal link between their actions and the constitutional violation.

Ms. Smith also failed to plead sufficient factual allegations to support deliberate indifference on the part of these defendants. First, Ms. Smith alleges that Defendants "were aware that the policies and procedures they created, promulgated, implemented, and/or enforce[d]—or failed to create, promulgate, implement, or enforce—resulted in grossly deficient medical care to inmates at Joseph Harp." Aplt. App. 59. However, such conclusory allegations, without sufficiently pleaded supporting facts, are insufficient to state a claim. Iqbal, 556 U.S. at 679. Second, Ms. Smith alleges that Mr. Allbaugh referred to JHCC as a "sinking ship." Aplt. App. 59–60. However, such a broad statement is inadequate to demonstrate that Mr. Allbaugh knew there were specific policies being violated and failed to enforce them. It is likewise inadequate to demonstrate awareness of an absence of specific policies to prevent the violation of inmates' constitutional rights.

### ii. Improper Hiring/Supervision Claim

We also disagree with the district court that Ms. Smith sufficiently pled that Defendants improperly hired, supervised, and retained certain medical staff employees. This court has held that a supervisory liability claim will not succeed in the absence of some "direct causal link between the [defendant's] action and the deprivation of federal rights." Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 770 (10th Cir. 2013) (citation omitted). Ms. Smith's allegations center on the hiring of two medical staff members at JHCC: Robert Balogh and Wendell Miles,

11

respectively the physician and PA employed by the ODOC and assigned to JHCC. Aplt. App. 41, 58–59. Ms. Smith alleges that Defendants were liable given the past drug use and related discipline of Mr. Balogh and Mr. Miles. Aplt. App. 58, 63. However, Ms. Smith does not allege that Mr. Balogh and Mr. Miles' violation of Mr. England's Eighth Amendment rights was caused by their drug use.

As we have concluded that Ms. Smith failed to sufficiently plead that Mr. Allbaugh and Mr. Bear committed a constitutional violation, we need not address whether any such violation was of a clearly established constitutional right. See Morris, 672 F.3d at 1191.

Accordingly, the district court's order is **REVERSED** as to the denial of qualified immunity for Defendants-Appellants Joe Allbaugh and Carl Bear.

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT
# OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Christopher M. Wolpert
Clerk of Court

February 10, 2021

Jane K. Castro
Chief Deputy Clerk

Mr. Devan Pederson
Ms. Kari Hawkins
Office of the Attorney General for the State of Oklahoma
Litigation Department
313 NE 21st Street
Oklahoma City, OK 73105

**RE:**     **20-6029, Smith v. Allbaugh, et al**
Dist/Ag docket: 5:19-CV-00470-G

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of the Court

cc: Paul DeMuro
Emma Lerner Freeman
Henry Adam Meyer III
Katherine R. Rosenfeld

CMW/mlb