IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

CHRISTINA SMITH, as Personal Representative the
Estate of her son, Joshua Christopher England,   )
                                                  )
          Plaintiff,                              )
                                                  )
v.                                                )   **Case No. CIV-19-470-G**
                                                  )
JOE ALLBAUGH, ET AL.,                             )
                                                  )
          Defendants.                             )

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH BRIEF IN SUPPORT

**COME NOW** Defendants Allbaugh, Bear, Balogh, Miles, Hays and Noble, and respectfully move to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for the reason that the Second Amended Complaint (Doc. 79) fails to state a claim upon which relief can be granted.

## STATEMENT OF THE CASE

Plaintiff Christina Smith is the mother of former Oklahoma Department of Corrections (DOC) inmate Joshua England. Mr. England was housed at the Joseph Harp Correctional Center (JHCC) when the instant claims allegedly arose. At all times relevant to Plaintiff's claims, Defendant Joe Allbaugh served as the Director of the DOC, Defendant Carl Bear served as Warden of JHCC, Defendant Robert Balogh served as a physician at JHCC, Defendant Wendell Miles was employed as a licensed Physician's Assistant at JHCC and Defendants Laura Hays and Laura Noble served as Licensed Practical Nurses at JHCC.

In her Second Amended Complaint (Doc. 79), Plaintiff alleges that Mr. England died of a ruptured appendix after Defendants failed to provide appropriate medical treatment and/or adequate supervision of prison staff. Plaintiff seeks

punitive and compensatory damages. However, Defendants submit that Plaintiff's claims against them must be dismissed.

## STANDARD FOR DISMISSAL

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating plausibility, a court need not accept as true legal conclusions couched as factual allegations. *Id.* Where a complaint pleads facts that are merely "consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* In cases brought against governmental actors sued in their individual capacities, "the complaint must make clear exactly *who* is alleged to have done *what* to *whom*." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in original). When such a complaint uses either the collective term "Defendants" or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, the complaint must be dismissed. *Id.* at 1250.

> **Proposition I:** Plaintiff's state-law claims against Defendants must be dismissed because they are based on an alleged breach of duty derived only from Defendants' governmental employment.

The Oklahoma Governmental Tort Claims Act ("GTCA") requires all tort actions falling under its purview to be brought against the State of Oklahoma or a political subdivision therein, and bars any action against an "employee of the state or political subdivision acting within the scope of his employment." *See* 51 O.S. § 163(C). *See also Shepherd v. CompSource Oklahoma*, 2009 OK 25, 209 P.3d 288, 294 (the state or a political subdivision's "liability for loss resulting from the torts of its employees acting within the scope of their employment ... is exclusive and in place of all other liability of an employee at common law or otherwise.") Scope of employment is defined by the GTCA as follows:

> … performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud….

51 O.S. § 152(12).

Accordingly, a claim against a government employee alleging breach of a duty imposed by virtue of the employee's employment position cannot be brought against the government employee individually. *Hutto v. Davis*, 972 F. Supp. 1372, 1379 (W.D. Okla. 1997); *Cooper v. Millwood Indep. Sch. Dist. No. 37*, 887 P.2d 1370, 1375 (Okla. App. Div. 1 1994).

In *Cooper*, the mother of a school student sued the school district and its bus driver for negligence when the student was injured by another student on the bus. The court affirmed the dismissal of the mother's claim against the bus driver because the duty allegedly breached by the driver arose from his employment "as driver of School Bus No. 8." *Cooper*, 887 P.2d at 1374. As the court explained, "no claim arising from the performance of his duties may be made against [the bus driver] individually, because 'scope of employment' claims are prohibited by § 163(C) of the [GTCA]." *Cooper*, 887 P.2d at 1375.

Here, Plaintiff's state-law claims for relief are similarly flawed. The Defendants' duties owed to Plaintiff's decedent existed only because of their DOC employment responsibilities. Just as in *Cooper*, Plaintiff's operative complaint "clearly links [Defendants'] legal duties, and the alleged breach of those duties, to [Defendants' employment responsibilities]." 887 P.2d at 1374-1375. With respect to DOC Direct Allbaugh, Plaintiff alleges that:

> Allbaugh, **as Director of the DOC**, was responsible for the supervision and conduct of all DOC matters, and was responsible for the training, supervision, and conduct of all DOC personnel, including Defendants referenced herein. **As Director**, Allbaugh was also responsible for the care, custody, and control of all inmates housed in the DOC's prisons, including the creation, promulgation, implementation, and oversight of policies and programs governing on-site medical treatment programs for inmates of prison facilities . . . .

2d. Am. Compl. (doc. 79) at ¶ 6 (emphasis added). With respect to Warden Bear, Plaintiff

alleges that:

> **<u>As Warden</u>**, his responsibilities included the care, custody, and control of all inmates, as well as the supervision of all staff. He was responsible for the creation, promulgation, implementation, and oversight of policies and programs governing on-site medical treatment of inmates at Joseph Harp. **<u>As Warden</u>**, Bear had a duty to ensure the physical safety and wellbeing of the people incarcerated at Joseph Harp and to provide them with fundamental human necessities, including medical care.

2d. Am. Comp. (doc. 79) at ¶ 7 (emphasis added). Similarly, as to each of the Medical Defendants (Balough, Miles, Hays, and Noble), Plaintiff's claims all depend on the fact that these defendants were "employed by the DOC and assigned to Joseph Harp." 2d Am. Compl. (doc. 79) at ¶¶ 9-12. Here, just as in *Cooper*, the Defendants' duties to Plaintiff's decedent "would derive only from [their] duties as [DOC employees]." *Cooper*, 887 P.2d at 1375; *see also Hutto*, 972 F. Supp. at 1379 (tort claims dismissed where allegation was that government employees "breached a duty imposed on them by virtue of their employment positions.").

This case is distinguishable from cases such as *Nail v. City of Henryetta*, 911 P.2d 914 (Okla. 1996), not only because this case must follow federal, rather than state, pleading standards, but because the duty allegedly breached by the officer in *Nail* did not arise solely as a result of the officer's employment obligations. All individuals have a duty not to assault and batter others. This universal duty exists regardless of a defendant's employment responsibilities. The duties asserted by Plaintiff in the case at bar, however, are owed only because of the Defendants' employment responsibilities. Thus, this case is governed by *Cooper* and *Hutto*, rather than by cases such as *Nail*.

**Proposition II: Plaintiff's claims of Intentional Infliction of Emotional Distress fail.**

Plaintiff's claim for Intentional Infliction of Emotional Distress ("IIED") fails for the same reason as her other state-law claims fail. They are all premised upon Defendants' failure to provide adequate medical care for Plaintiff's decedent, which they owed him due to their status as DOC employees. While it is true that all persons owe a duty not intentionally inflict severe emotional distress on another, and that this duty is not a result of employment

responsibilities, Plaintiff does not allege any facts upon which her IIED claim is based other than the failure to provide adequate medical care. For this reason, Plaintiff's IIED claims for the same reason as her other state-law claims fail, as discussed in Proposition I.

In addition, Plaintiff does not explicitly state what actions of each Defendant were allegedly designed to inflict severe emotional distress. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Rather than list any specific allegations or facts that support her claims, Plaintiff merely recites the elements of an IIED claim. There are no specific allegations of what facts or claims are connected to their alleged emotional distress; or any conduct that would rise to the level of willful, wanton or malicious. The tort of intentional infliction of emotional distress is governed by narrow standards that permit recovery only for extreme and outrageous conduct coupled with severe emotional distress. *Duvall v. Oklahoma State Bd. of Osteopathic Examiners*, CIV-17-247-F, 2018 WL 6333708, at *10 (W.D. Okla. Aug. 10, 2018). To prevail, a plaintiff must establish that the defendant intentionally or recklessly engaged in extreme and outrageous conduct that caused the plaintiff to suffer severe emotional distress. *Id.* The trial court acts as a gatekeeper regarding the outrageousness of the defendant's conduct and the severity of the plaintiff's distress in an effort to ensure that only valid claims reach the jury under the appropriate legal standards. *Id.* Valid IIED claims are those where the facts before the court would permit a reasonable jury to find that (1) the defendant's conduct was so outrageous in character and so extreme in degree that it went beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community, and (2) the plaintiff's resulting emotional distress was so severe that no reasonable person could be expected to endure it. *Id.* Plaintiff's allegations do not fit within these "narrow standards." For these reasons, Plaintiff's IIED claims should be dismissed for failure to state a claim upon which relief can be granted.

**Proposition III: Plaintiff has failed to plead sufficient facts against Defendants Allbaugh or Bear to show causation or lack of good faith.**

A plaintiff must plead facts sufficient to support its claim and may not stand on mere conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Here's Plaintiff fails to plead facts sufficient to show that either Allbaugh or Bear lacked good faith in taking the actions they took or that their actions caused Plaintiff's decedent's injuries. As the Tenth Circuit observed in the interlocutory appeal of this matter, "Ms. Smith fails to allege facts that Defendants knowing failed to enforce the policy and therefore fails to assert a causal link between their actions and the constitutional violation." *Smith v. Allbaugh*, 987 F.3d 905, 911 (10th Cir. 2021). In addition, Ms. Smith's only claims of lack of good faith are conclusory: Defendants "failed to perform their employment duties in good faith." Doc. 79 at ¶ 140. Such claim in insufficient under federal pleading standards. *Id.* For the same reasons that the Tenth Circuit found that Plaintiff had not stated a claim for relief against Allbaugh and Bear on the federal claims against them, this Court should dismiss Plaintiff's state law claims since they are similarly inadequate to state a claim for lack of good faith or causation.

**CONCLUSION**

For the foregoing reasons, Defendants Allbaugh, Bear, Balogh, Miles, Hays and Noble respectfully request that this Court grant their motion to dismiss.

Respectfully submitted,

/s/ Devan Pederson
**Devan Pederson, OBA 16576**
**KARI Y. HAWKINS, OBA #19824**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Email: Kari.Hawkins@oag.ok.gov
Email: Richard.Mann@oag.ok.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 9TH day of March, 2021, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of the Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Paul DeMuro | Katherine Rosenfeld |
| Frederic Dorwart, Lawyers PLLC | Alison Frick |
| Old City Hall Building | 600 Fifth Avenue, 10th Floor |
| 124 East Fourth Street | New York, New York 10020 |
| Tulsa, OK 74103 | *Attorneys for Plaintiff* |
| *Attorney for Plaintiff* | |

/s/ Devan Pederson
Devan Pederson