UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CHRISTINA SMITH, as Personal )
Representative of the Estate of her son, )
Joshua Christopher England, )
)
    Plaintiff, )
)
v. ) Case No. CIV-19-470-G
)
JOE ALLBAUGH et al., )
)
    Defendants. )

# ORDER

Now before the Court is a Motion to Dismiss (Doc. No. 80) filed by six defendants (collectively, "Defendants"): Joe Allbaugh and Carl Bear (the "Senior Defendants"); and Robert Balogh, Wendell Miles, Laura Hays, and Laura Noble (the "Medical Defendants").[1] Plaintiff Christina Smith, as Personal Representative of the Estate of her son, Joshua Christopher England, has responded (Doc. No. 86), and Defendants have filed a Reply (Doc. No. 87). Having carefully reviewed the parties' submissions, the Court concludes that the Motion should be denied.

    I.    *Summary of the Pleadings*

Plaintiff's claims arise from the death of Plaintiff's son Joshua England ("England") from a ruptured appendix in May 2018, while England was housed as a prisoner at the

---

[1] The docket reflects that the remaining defendants—Oklahoma Department of Corrections ("ODOC") Officers "John Does" #1-10 (the "Officer Defendants") and Case Manager "Richard Roe"—have not yet been served and did not join in the Motion to Dismiss. *See* Doc. Nos. 34, 35, 42, 72. For purposes of this Order, the Court considers only those claims alleged against the moving Defendants.

Joseph Harp Correctional Center ("JHCC"), an ODOC facility in Lexington, Oklahoma. *See* Second Am. Compl. (Doc. No. 79) ¶¶ 1-3, 20-112.  The moving Defendants are former ODOC Director Allbaugh, former JHCC Warden Bear, ODOC physician Dr. Balogh, ODOC physician's assistant Miles, and ODOC licensed practical nurses Hays and Noble. Plaintiff is suing these defendants in their individual capacities and seeks compensatory and punitive damages, as well as attorney's fees and costs.  *See id.* at 3-5, 31.

In her pleading, Plaintiff brings federal civil rights claims under 42 U.S.C. § 1983 against the Medical Defendants and the Officer Defendants, alleging deliberate indifference to England's medical needs in violation of the Eighth Amendment.  *See id.* ¶¶ 115-118; *see also* Op. & Order of Feb. 24, 2020 (Doc. No. 42) at 2 n.4; *Smith v. Allbaugh*, 987 F.3d 905, 910 (10th Cir. 2021).  Plaintiff additionally asserts the following state-law claims: (1) medical malpractice against the Medical Defendants, *see* Second Am. Compl. ¶¶ 119-125; (2) intentional infliction of emotional distress against the Medical Defendants and the Officer Defendants, *see id.* ¶¶ 126-130; (3) negligent infliction of emotional distress against the Medical Defendants and the Officer Defendants, *see id.* ¶¶ 131-136;[2] (4) negligent hiring, training, and retention of employment services against the Senior Defendants, *see id.* ¶¶ 137-141; (5) wrongful death against all Defendants, *see id.* ¶¶ 142-145; and (6) negligence against all Defendants, *see id.* ¶¶ 146-150.

---

[2] Under Oklahoma law, negligent infliction of emotional distress "is not an independent tort, but is in effect the tort of negligence." *Wilson v. Muckala*, 303 F.3d 1207, 1213 (10th Cir. 2002).

2

*II.     Applicable Standard*

Citing Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants seek dismissal of Plaintiff's claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

"[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in the pleading, the court discusses the essential elements of each alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim." *Id.* at 1192. A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

III.  Discussion

　A.  *Plaintiff's State-Law Claims*

Defendants first argue that Plaintiff's state-law tort claims of medical malpractice, negligence/negligent infliction of emotional distress, wrongful death, and negligent hiring, training, and retention of employment services are subject to dismissal because they allege a breach of a duty imposed only by virtue of each defendant's position as a government employee. *See* Defs.' Mot. to Dismiss at 2-4. Similarly, Defendants contend that Plaintiff's claim for intentional infliction of emotional distress ("IIED") fails because it is premised only upon Defendants' failure to provide medical care that was owed due to their status as ODOC employees. *See id.* at 4-5.

Plaintiff previously raised these same legal claims in her Amended Complaint. *See* Am. Compl. (Doc. No. 19); *see also* Defs.' Reply at 3 n.1 ("The Second Amended Complaint contains no new allegations against Defendants."). And Defendants previously moved to dismiss most of those claims on essentially identical grounds as are asserted now. *Compare* Defs.' Mot. to Dismiss Am. Compl. (Doc. No. 21) at 2-5, 5-6, *with* Defs.' Mot. to Dismiss at 2-4, 4-5. The Court denied Defendants' request, holding that Plaintiff had sufficiently pleaded the relevant claims under Oklahoma law. *See* Op. & Order of Feb. 24, 2020, at 18-22.[3]

---

[3] Although, as addressed below, certain determinations made by the Court in that Opinion and Order were later reversed on appeal, this holding was not challenged by the appealing defendants or addressed by the Tenth Circuit in its decision.

Plaintiff argues that the Court's previous rejection of certain of Defendants' arguments is now "the law of the case" and that relitigation of these issues is precluded. *See* Pl.'s Resp. at 6-8 (citing *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1241 (10th Cir. 2016) (explaining that the law-of-the-case doctrine "preclud[es] the relitigation of issues either expressly or implicitly resolved in prior proceedings in the same court")). Defendants counter that "[t]he 'law of the case doctrine has no bearing on the revisiting of interlocutory orders.'" Defs.' Reply at 5 (quoting *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1252 (10th Cir. 2011)).

The Court need not determine whether the doctrine could be applied to bar Defendants' challenge to the superseding pleading, because assuming the Court may consider Defendants' reurged arguments, they do not support dismissal of these claims under Rule 12(b)(6).

        1. *Plaintiff's Tort Claims*

The Oklahoma Governmental Tort Claims Act ("OGTCA"), Okla. Stat. tit. 51, §§ 151 et seq., provides "the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort" under Oklahoma law. *Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1163 (Okla. 2009); *see, e.g.*, Okla. Stat. tit. 51, § 153(B). The OGTCA generally immunizes individual state employees from liability for torts committed "within the scope of their employment." Okla. Stat. tit. 51, § 152.1(A); *see id.* § 163(C); *Crouch v. Daley*, 581 F. App'x 701, 705 (10th Cir. 2014) (holding that state employee acting within scope of employment is immune from tort liability under OGTCA and "responsibility for any loss incurred as a result of that employee's torts shifts to the political subdivision").

5

In their Motion, Defendants argue that because any duties owed to England existed only due to their employment responsibilities, Plaintiff's claims are such "scope of employment" claims barred by the OGTCA. *See* Defs.' Mot. to Dismiss at 3-4 (citing *Cooper v. Millwood Indep. Sch. Dist. No. 37*, 887 P.2d 1370, 1374-75 (Okla. Civ. App. 1994)). Under the OGTCA, the term "scope of employment" is defined as "performance by an employee *acting in good faith* within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority." Okla. Stat. tit. 51, § 152(12) (emphasis added). Thus, "[a]n act of the employee is not in the scope of employment if the employee acted maliciously or in bad faith." *Pellegrino v. State ex rel. Cameron Univ.*, 63 P.3d 535, 537 (Okla. 2003). The factual allegations presented by Plaintiff—particularly as regards the lack of provision of appropriate medical care to England despite his repeated and increasingly urgent requests—"raise an inference of bad faith sufficient to withstand dismissal pursuant to the [OGTCA]." *Romero v. City of Miami*, 8 F. Supp. 3d 1321, 1333 (N.D. Okla. 2014); *see, e.g.*, Second Am. Compl. ¶¶ 36, 41, 43, 48, 67-68, 79, 124, 133, 140, 133, 148; *see also* Op. & Order of Feb. 24, 2020, at 18-20; *cf. Gowens v. Barstow*, 364 P.3d 644, 652 (Okla. 2015) (rejecting the proposition that "malice or bad faith can never be inferred from conduct exhibiting reckless disregard for the rights of others"); *Shephard v. CompSource Okla.*, 209 P.3d 288, 293 (Okla. Civ. App. 2009) ("[A]cts contrary to the interests of the employer are not within the scope of employment.").

Moreover, this Court has repeatedly noted that "while [the scope-of-employment] issue may be adjudicated upon consideration of a summary judgment motion, it cannot

6

properly be determined in a motion to dismiss." *Pendergraft v. Bd. of Regents of Okla. Colls.*, No. CV-18-793-D, 2019 WL 3806639, at *6 (W.D. Okla. Aug. 13, 2019) (internal quotation marks omitted); *accord Melton v. Okla. ex rel. Univ. of Okla.*, 532 F. Supp. 3d 1080, 1092 (W.D. Okla. 2021). "Except in cases where only one reasonable conclusion can be drawn, the question of whether an employee has acted within the scope of employment at any given time is a question for the trier of fact." *Tuffy's, Inc.*, 212 P.3d at 1163; *see Nail v. City of Henryetta*, 911 P.2d 914, 918 (Okla. 1996). As explained above, Plaintiff has alleged facts plausibly showing that Defendants were not acting in good faith as to the conduct alleged to be tortious. Because "different conclusions could be drawn as to whether [Defendants] acted in good faith," their request for dismissal based on OGTCA immunity must be denied. *Melton*, 532 F. Supp. 3d at 1092.

2. *Plaintiff's Claim for Intentional Infliction of Emotional Distress*

Oklahoma recognizes the tort of intentional infliction of emotional distress as "governed by the narrow standards of the Restatement (Second) of Torts § 46." *Comput. Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). Recovery is permitted only for "extreme and outrageous conduct coupled with severe emotional distress." *Id.* To prevail, a plaintiff must establish that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Id.*

With respect to Plaintiff's IIED claim, Defendants argue that Plaintiff's claim of intentional infliction of emotional distress must fail because this claim is based only upon the Medical Defendants' alleged failure to provide adequate medical care that they owed

pursuant to their status of ODOC employees. Defs.' Mot. to Dismiss at 4-5. Defendants further contend that Plaintiff's relevant allegations lack specificity and fail to plausibly plead that Defendants "intentionally or recklessly engaged in extreme and outrageous conduct." *Id.* at 5.[4]

In her pleading, Plaintiff asserts that the Medical Defendants "engaged in extreme and outrageous conduct intentionally and recklessly causing severe emotional distress to [England]" and that they "abused their power and failed to perform their employment duties in good faith." Second Am. Compl. ¶ 127. Relevant to these assertions, Plaintiff alleges that England was "in tears on at least one occasion" and that he made repeated pleas for medical assistance as his condition deteriorated, which the Medical Defendants essentially ignored, until England "died alone" in his cell "after languishing in delirium and unimaginable pain." *Id.* ¶¶ 31-32, 37, 40-43, 48-49, 56, 68, 78-80, 86. Plaintiff further alleges that:

- On May 22, 2018, Defendant Hays gave England Pepto-Bismol and "sent him away" despite his "level 8" pain, loss of six pounds in six days, and "guarding" of his abdomen;

- On May 23, 2018, Defendants Hays and Miles gave England a laxative and sent him back to his cell despite his "level 10" pain, elevated pulse, and rectal bleeding;

---

[4] To the extent Defendants raise arguments in their Motion that were not previously presented to the Court, Plaintiff asserts that such new arguments are barred pursuant to Federal Rule of Civil Procedure 12(g)(2). *See* Pl.'s Resp. at 10-11; Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."). The Court need not decide whether that Rule would preclude Defendants from raising new arguments with respect to a superseding pleading, because Defendants' Motion is subject to denial even assuming the Court may address the merits of the new arguments herein.

- On May 24, 2018, Defendant Hays "refused to see" England, despite England's complaint that his "stomach hurts so bad . . . it's hard to breathe and sleep," and provided, "You were seen on 5/23/18," as the only response to his request for help;

- On May 26, 2018, Defendants Noble and Miles failed to perform an abdominal exam, and Defendant Balogh failed to personally examine England, instead ordering that England "be given Ibuprofen" and increase his fluid and fiber intake;

- On May 29, 2018, Defendant Hays noted that England was "distraught" but Defendants Hays and Miles did not notify a physician of England's clinic visit or obtain emergency medical treatment for him;

- On that same date, Defendant Hays and other JHCC employees went to England's cell and recorded a video of England in his dying moments, "ostensibly to document his 'refusal' of medical care," despite England being in obvious distress and delirium and stating that he could not walk to the facility clinic;

- Defendant Hays also forced England to sign a waiver of medical treatment despite England's extreme distress; and

- Hours later, on May 29, 2018, England, "after languishing in delirium and unimaginable pain, died alone on the floor of his prison cell" at the age of 21 of a ruptured appendix with acute peritonitis.

*Id.* ¶¶ 28-33, 34-37, 39-43, 44-62, 69-74, 78-81.

Assuming the truth of Plaintiff's well-pleaded allegations, the Second Amended Complaint states a plausible claim for relief against each Medical Defendant for intentional infliction of emotional distress. *See Comput. Publ'ns*, 49 P.3d at 735; *Gowens*, 364 P.3d at 652; *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 856 (10th Cir. 2005) (noting that in Oklahoma the "recklessness" element of a claim for intentional infliction of emotional distress "includes actions that are in deliberate disregard of a high degree of probability that the emotional distress will follow" (internal quotation marks omitted)). Further, a plausibly pleaded IIED claim is inconsistent with a claim based on conduct for a tort conducted by an employee within the scope of employment. *See*

9

*Hindman v. Thompson*, 557 F. Supp. 2d 1293, 1306-07 (N.D. Okla. 2008) (explaining that "[a] governmental employee . . . only acts within the scope of employment when he acts in good faith" and "it is well-established that" a plaintiff cannot demonstrate the employee's behavior was "outrageous," as required for an IIED claim, if the employee was acting in good faith).

The Court notes that the "nature and specificity of the allegations required to state a plausible claim will vary based on context," and Plaintiff's IIED claim is not particularly complex. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011); *see also Twombly*, 550 U.S. at 556 (explaining that the plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the alleged wrongdoing).

### B. Plaintiff's Claims Against the Senior Defendants

As referenced above, Plaintiff identifies former ODOC Director Allbaugh and former JHCC Warden Bear as liable on her state-law claims for negligence, wrongful death, and negligent hiring, training, and retention of employment services. *See* Second Am. Compl. ¶¶ 137-150. Defendants argue that Plaintiff fails to sufficiently plead "that either Allbaugh or Bear lacked good faith in taking the actions they took or that their actions caused [England's] injuries." Defs.' Mot. to Dismiss at 6.

In support, Defendants rely upon the opinion issued by the Tenth Circuit on the prior interlocutory appeal in this matter. *See id.* (citing *Smith*, 987 F.3d at 912); *supra* note 3. On that interlocutory appeal, the pleading issue addressed by the Tenth Circuit was the Senior Defendants' entitlement to qualified immunity on federal constitutional claims that

10

had been brought by Plaintiff pursuant to 42 U.S.C. § 1983 based upon these officials' supervisory liability. *See Smith*, 987 F.3d at 909-12. In concluding that the Senior Defendants were entitled to qualified immunity on those federal claims, the Tenth Circuit held that Plaintiff had "failed to sufficiently plead that Mr. Allbaugh and Mr. Bear committed a constitutional violation." *Id.* at 912. Because the Tenth Circuit did not address Plaintiff's state-law claims, or expressly or impliedly discuss whether Plaintiff's allegations (in the prior pleading) were sufficient to satisfy the required elements of such state-law claims, that decision does not support dismissal of Plaintiff's state-law claims. *Cf. Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003) ("Although a district court is bound to follow the mandate, and the mandate controls all matters within its scope, a district court on remand is free to pass upon any issue which was not expressly or impliedly disposed of on appeal." (omission and internal quotation marks omitted)).

The Court has reviewed Plaintiff's allegations and finds them adequate to plausibly state the relevant claims against Defendants Allbaugh and Bear with respect to both lack of good faith and causation. As set forth above, *see supra* Part III(A)(1), Plaintiff's well-pleaded tort claims, including with respect to the Senior Defendants, "raise an inference of bad faith sufficient to withstand dismissal" and present "a question for the trier of fact" on the scope-of-employment issue. *Romero*, 8 F. Supp. 3d at 1333; *Tuffy's, Inc.*, 212 P.3d at 1163; *see, e.g.*, Second Am. Compl. ¶ 98 ("The Senior Defendants were aware of the grossly deficiently medical care provided to inmates at [JHCC] but took no steps to correct it or to hire appropriate medical providers."); *id.* ¶¶ 6-8, 67, 77, 90, 96-97, 99-101, 138-40, 144, 147-48. Plaintiff likewise has plausibly alleged that the Senior Defendants' acts or

11

omissions caused the cited injuries, as required to state claims for negligence,[5] wrongful death,[6] and negligent hiring, training, and retention of employment services[7] under Oklahoma law. *See, e.g.*, Second Am. Compl. ¶¶ 6-7 (alleging that Allbaugh and Bear were responsible for the conduct of JHCC staff and the care of the facility's inmates), 67 (alleging that Allbaugh and Bear failed to implement and enforce policies that would require medical staff to immediately inform a physician and/or refer certain patients to a hospital or that would require physicians to conduct in-person examinations of critically ill patients or arrange for their immediate transfer to a facility for such an examination), 92-98 (alleging that the Senior Defendants hired, supervised, and retained certain personnel who had previously been disciplined in connection with their provision of medical care and services), 99 (alleging that JHCC "was overcrowded, underfunded, and understaffed during the relevant time period, which contributed to the failure to provide adequate

---

[5] *See Krokowsi v. Henderson Nat'l Corp.*, 917 P.2d 8, 11 (Okla. 1996) ("To support an actionable claim for negligence, a plaintiff must establish the concurrent existence of: a duty on the part of the defendant to protect the plaintiff from injury; a failure of the defendant to perform that duty; and an injury to the plaintiff resulting from the failure of the defendant.").

[6] *See* Okla. Stat. tit. 12, § 1053(A) ("When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter . . . if the former might have maintained an action, had he or she lived, against the latter, or his or her representative, for an injury for the same act or omission.").

[7] *See N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 600 (Okla. 1999) ("Employers may be held liable for negligence in hiring, supervising or retaining an employee. In such instances, recovery is sought for the employer's negligence. The claim is based on an employee's harm to a third party through employment. An employer is found liable, if—at the critical time of the tortious incident—, the employer had reason to believe that the person would create an undue risk of harm to others." (footnotes omitted)).

medical care to prisoners, including [England]"); *see also Twombly*, 550 U.S. at 556. Defendants are not entitled to dismissal on this basis.

## CONCLUSION

For the reasons cited herein, Defendants' Motion to Dismiss (Doc. No. 80) is DENIED.

Plaintiff's Motions seeking to commence proceedings in this matter (Doc. Nos. 91, 93) are DENIED as moot. The Court will set a status and scheduling conference on the Court's next available conference docket to address Plaintiffs' remaining service requirements, the parties' discovery and pretrial deadlines, and other pertinent items.

IT IS SO ORDERED this 29th day of July, 2022.

CHARLES B. GOODWIN
United States District Judge