# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTINA SMITH, as Personal Representative of the Estate of her Son Joshua England, <br><br> Plaintiff, <br> v. <br><br> JOE ALLBAUGH, *et al.*, <br> Defendants. | Case No.: 19-cv-00470-G |

## JOINT STATUS REPORT AND DISCOVERY PLAN

Date of Conference: August 31, 2022, per Doc. 97.

Appearing for Plaintiff: Paul DeMuro, Frederic Dorwart Lawyers, PLLC and Katherine Rosenfeld, Emery Celli Brinckerhoff Abady Ward & Maazel LLP.

Appearing for Defendants Joe Allbaugh, Carl Bear, Robert Balogh, and Wendell Miles: Assistant Attorneys General Devan Pederson and Jessica Wilkes, Office of the Attorney General, State of Oklahoma.

State Attorneys have a pending motion to withdraw from representation of Defendant Laura Noble. [Doc. 110].

Appearing for Defendant Hays: Amy Sherry Fischer, Foliart, Huff, Ottaway & Bottom.

**Jury Trial Demanded** × **Non-Jury Trial** ☐

1. **BRIEF PRELIMINARY STATEMENT**. State briefly and in ordinary language the facts and positions of the parties to inform the judge of the general nature of the case.

    a. Plaintiff: Plaintiff Christina Smith is the Personal Representative of the Estate of her son Joshua England, who died on May 29, 2018 while serving a short sentence at Joseph Harp Correctional Center ("JHCC") in Lexington. He was 21 years old. In the week before he died, Joshua repeatedly sought medical treatment for the classic signs of acute appendicitis. On at least five separate occasions over seven days, Joshua complained to JHCC medical staff of severe abdominal pain. On May 22, 2018, Joshua submitted a sick call request, stating he had been "puking" and that his stomach hurt "so so bad." On May

23, 2018, Joshua again requested help, stating that the pain in his stomach was "so bad" that he could "barely breath." On May 23, 2018, Joshua submitted a third sick call request, stating "my stomach hurts so bad. . . . it's hard to breathe and sleep . . ." On May 26, 2019, Joshua again requested help, stating his "stomach hurts so so bad its [*sic*] hard to breath [*sic*]." On May 29, 2018, Joshua again requested help, stating that he was "short of breath" and that his "stomach hurts." Although for seven days, Joshua literally begged the staff for care, Defendants failed to give Joshua the most basic medical treatment. They failed conduct a proper clinical abdominal examination, refer him to a physician, or take him to the hospital for a CAT scan or surgical evaluation. At least two of the medical staff defendants in this case have histories of being disciplined by medical licensing bodies. In 2010, for example, Defendant Balogh was disciplined by the Oklahoma Bureau of Narcotics and Dangerous Drugs, fined $10,000, and placed under a 5-year probation. On the morning of May 29, 2018, Joshua again visited the clinic. His chief complaint was "Can't breathe." He had lost twelve pounds in less than two weeks. Defendant Hays later noted in Joshua's chart that he appeared "distraught," and he was "sweating profusely." While he was at the clinic, an EKG showed that Joshua's heart rate was at a shocking 158 beats per minute. The EKG results should have alerted clinic staff that Joshua was facing a dire medical emergency and that he needed life-saving intervention at a hospital immediately. Instead, after Joshua left the clinic unable to wait and bear the pain, some of the Defendants went to Joshua's cell, and as Joshua lay dying, forced him to document his "refusal" of medical care. Defendants' conduct was a complete deviation from reasonable standards of medical care. Joshua was not competent to "refuse" medical treatment: he was too sick even to walk, delirious with toxic shock, and hours from death. He needed to be taken by stretcher and ambulance to an emergency room. Just hours later, at 4:43pm, after languishing in unimaginable pain for many days, Joshua died alone on the floor of the prison. He had turned 21 years old two weeks earlier. An autopsy determined that Joshua had died of a ruptured appendix with acute peritonitis, a condition that is eminently survivable with basic medical treatment.

b. <u>Defendants</u>: At all times relevant to Plaintiff's claims, Joshua England was an offender assigned to the Delayed Sentencing Program for Youthful Offenders, which is operated by the Oklahoma Department of Corrections (ODOC) at the Bill Johnson Correctional Center (BJCC). While at BJCC, Mr. England was treated for a hernia on his left side. Mr. England was transferred to the Joseph Harp Correctional Center (JHCC) in February of 2018 after refusing to participate in the Delayed Sentencing Program. In April of 2018, Mr. England was evaluated at JHCC for a possible right inguinal hernia after complaining of pain in his right side caused by lifting a ladder. He was seen again by JHCC medical staff on May 16, 2018, whereupon Physician's Assistant Wendell

Miles scheduled a surgical consultation for Mr. England, which was to occur on June 13, 2018 at the Lindsay Municipal Hospital. In the interim, Mr. England received consistent and ongoing care by JHCC medical staff for suspected stomach and digestive ailments. On the morning of May 29, 2018, shortly after 8:30 a.m., Mr. England visited the prison's medical unit complaining of shortness of breath and stomach pain, whereupon Nurse Laura Hays ordered an EKG. After Mr. England received the EKG, his appointment was slightly delayed while medical staff responded to a report of an emergency. Instead of waiting for his appointment to resume, Mr. England left the medical unit without being seen by Physician's Assistant Wendell Miles. As he was returning to his cell, Mr. England encountered Nurse Hays, who asked him to return to the medical unit for treatment. However, Mr. England declined to do so. After arriving at his cell, Mr. England requested to return to the medical unit in a wheelchair. In response, at approximately 9:15 a.m., Nurse Hays and other prison staff visited Mr. England's cell and again asked him to return to the medical unit to continue his evaluation. Having seen Mr. England walking moments earlier, it did not appear to Nurse Hays that he needed a wheelchair. Nevertheless, Mr. England refused to return and signed a waiver of treatment because he did not want to walk back to the medical unit. Shortly after signing the waiver and claiming he needed a wheelchair to get to the medical unit, Mr. England was observed walking around his housing unit throughout the day on May 29, 2018, even visiting his case manager's office for paperwork. Mr. England unexpectedly passed away hours after refusing treatment - sometime between 4:00 pm and 4:45 p.m.

2. **JURISDICTION**. State the basis on which the jurisdiction of the Court is invoked and any presently known objections.

   The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a), and the laws of the State of Oklahoma.

3. **STIPULATED FACTS**. List stipulations as to all facts that are not disputed, including jurisdictional facts.

   1. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the laws of the State of Oklahoma.

   2. Venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b)(2).

   3. Joshua England was in ODOC custody from October 6, 2017 until May 29, 2018.

   4. Joshua England was incarcerated at Joseph Harp Correctional Center from

February 22, 2018 to May 29, 2018.

5. Joshua England died on May 29, 2018.

4. **CONTENTIONS AND CLAIMS FOR DAMAGES OR OTHER RELIEF SOUGHT**.

a. <u>Plaintiff</u>: Plaintiff alleges that Defendants were deliberately indifferent to Joshua's serious medical needs while he was a prisoner at JHCC, in violation of the Eighth and Fourteen Amendments of the United States Constitution. Plaintiff further brings claims under Oklahoma state law alleging that Defendants were negligent in their care and their supervision of his medical providers, intentionally and/or inflicted emotional distress on Joshua, and engaged in medical malpractice. Plaintiff contends that Defendants failed to provide the most basic medical care to Joshua, causing his wrongful death at the age of 21 years old. Plaintiff seeks compensatory and punitive damages, and reasonable attorneys' fees and costs.

b. <u>Defendants</u>: Plaintiff's claims must be dismissed or summary judgment granted in favor of Defendants for the following reasons:

1. The Eighth Amendment governs Plaintiff's deliberate indifference claim.
2. Claims of negligence do not rise to the level of a constitutional violation.
3. Plaintiff fails to state a claim for a constitutional violation.
4. Plaintiff fails to state a claim for negligence, intentional infliction of emotional distress or malpractice.
5. Defendants are entitled to qualified immunity.
6. Defendants did not personally participate in a constitutional violation.
7. Defendants Bear and Allbaugh did not hire or directly supervise the day to day activities or job duties of prison medical staff.
8. Any claim based upon a theory of respondeat superior must fail.
9. The State of Oklahoma is immune from suit and exempt from liability pursuant to the Oklahoma Governmental Tort Claims Act.
10. Defendants are not proper parties to Plaintiff's tort claims pursuant to the Oklahoma Governmental Tort Claims Act.
11. Failure to mitigate.
12. Intervening and/or supervening cause.
13. Defendants acted in good faith and within the scope of their employment at all times relevant.
14. Defendants did not act intentionally or recklessly, nor was their conduct extreme or outrageous.

15. Failure to exhaust administrative remedies.
16. All Defendants acted in good faith.
17. All Defendants' actions were within the scope of their employment for purposes of the GTCA.
18. Plaintiff is not entitled to punitive damages.

See also, Answers filed August 12, 2022 and August 17, 2022. [Docs. 101, 103-106, and 109]

5. **APPLICABILITY OF FED. R. CIV. P. 5.1 AND COMPLIANCE**.
   Do any of the claims or defenses draw into question the constitutionality of a federal or state statute where notice is required under 28 U.S.C. § 2403 or Fed. R. Civ. P. 5.1?
   
   x Yes   No

6. **MOTIONS PENDING AND/OR ANTICIPATED** (include date of filing, relief requested, and date responsive brief to be filed).

   - Defendants will file a Motion for Summary Judgment in accordance with the Court's scheduling order deadlines.
   - State attorneys have a motion to withdraw from representation of Defendant Noble. [Doc. 110]. Plaintiff requests that the Court address with the State Attorneys at the August 31, 2022 conference what conditions will be required regarding service of subsequent papers on current counsel for Ms. Noble and whether substitute counsel will appear on her behalf. The State Attorneys filed a motion on behalf of Defendant Noble on July 18th and a Notice of Appearance to represent her on July 29. Plaintiff is concerned that the State Attorneys' withdrawal from representing Defendant Noble after three years will prejudice Plaintiff in the event that it delays the progress of the case.

7. **COMPLIANCE WITH RULE 26(a)(1)**. Have the initial disclosures required by Fed. R. Civ. P. 26(a)(1) been made? _ Yes   x No

   If "no," by what date will they be made? By September 5, 2022.

8. **PLAN FOR DISCOVERY**.

   A. The discovery planning conference (Fed. R. Civ. P. 26(f)) was held on August 22, 2022.

   B. The parties anticipate that discovery should be completed within:

Plaintiff requests 4 months;
Defendants request 9 months.

C. In the event ADR is ordered or agreed to, what is the minimum amount of time necessary to complete necessary discovery prior to the ADR session? 90 days.

D. Have the parties discussed issues relating to disclosure or discovery of electronically stored information, including the form or forms in which it should be produced, pursuant to Fed. R. Civ. P. 26(f)(3)(C)?

× Yes ☐ No

E. Have the parties discussed issues relating to claims of privilege or of protection as trial-preparation material pursuant to Fed. R. Civ. P. 26(f)(3)(D)?

× Yes ☐ No

To the extent the parties have made any agreements pursuant to Fed. R. Civ. P. 26(f)(3)(D) and Fed. R. Civ. P. 502(e) regarding a procedure to assert claims of privilege/protection after production and are requesting that the court include such agreement in an order, please set forth the agreement in detail below and submit a proposed order adopting the same.
N/A_____

F. Identify any other discovery issues which should be addressed at the scheduling conference, including any subjects of discovery, limitations on discovery, protective orders needed, or other elements (Fed. R. Civ. P. 26(f)) which should be included in a particularized discovery plan.

9. **ESTIMATED TRIAL TIME**: Two weeks            .

10. **BIFURCATION REQUESTED**: x Yes  No

Medical Defendants Miles and Balough request a separate trial from the trial of Senior Defendants Allbaugh and Bear for the reasons outlined below.

Because Plaintiff's attorneys have indicated that they will attempt to offer evidence in support of their claims against Senior Defendants Allbaugh and Bear that would be inadmissible were it introduced against Medical Defendants Balogh and Miles, Balogh and Miles seek a trial separate from Allbaugh and Bear. Plaintiff will seek to introduce evidence against Allbaugh and Bear designed to show that Allbaugh and Bear acted in bad faith in hiring and/or employing Miles and Balogh based on long-past Oklahoma Board of Medical Licensure and Supervision discipline and other such prior-bad acts evidence relating to Medical Defendants Miles and Balogh. Even assuming for the sake of argument that such evidence would be admissible against Allbaugh and Bear,[1] it would ***not*** be admissible against Balogh and Miles. Rule 404(b)(1) specifically prohibits this type of evidence: "(1) Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *See also* Rule 403 (evidence more prejudicial than probative excluded). Plaintiffs will attempt to introduce such evidence to support their allegation against Senior Defendants Allbaugh and Bear that Allbaugh and Bear knew or should have known that Miles and Balogh were "potentially dangerous," Am. Compl. [Doc. 79 at ¶ 140] such that their alleged actions in hiring and/or employing Balogh and Miles were carried out in bad faith. This type of evidence would unfairly prejudice Medical Defendants Miles and Balogh if introduced in their trial. Fed. R. Evid. 403, 404(b)(1). Therefore, Medical Defendants Miles and Balogh must be tried separately from Senior Defendants Allbaugh and Bear. The trial of Senior Defendants Allbaugh and Bear should occur after the trial of the Medical Defendants since a defense verdict for the Medical Defendants would preclude liability as to Senior Defendants Allbaugh and Bear and render a second trial unnecessary.

Plaintiff objects to bifurcation at this time. Plaintiff submits that it is premature to determine whether bifurcation of trial of the type proposed by Defendants is appropriate or necessary in this case, when no discovery has occurred, and the case is at its inception. In any event, parties in Section 1983 cases frequently try claims against individual and supervisory defendants in the same trial and the Court can provide limiting instructions about the purpose of evidence as needed.

11. **POSSIBILITY OF SETTLEMENT**:  ☐ Good   ☐ Fair  × Poor

---

[1] Balough and Miles' alleged prior drug use did not cause Mr. England's injury. *Smith v. Allbaugh*, 987 F.3d 905, 912 (10th Cir. 2021).

12. **SETTLEMENT AND ADR PROCEDURES**:

    A.    Compliance with LCvR 16.1(a)(1) - ADR discussion:  × Yes   □ No

State attorneys have complied with LCvR 16.1 except with regard to Defendant Noble, with whom they have been unable to communicate, as more fully set forth in their motion to withdraw from representation of Defendant Noble. [Doc. 110].

    B.    The parties request that this case be referred to the following ADR process:

        □ Court-Ordered Mediation subject to LCvR 16.3
        X Judicial Settlement Conference
        □ Other _____
        □ None - the parties do not request ADR at this time.

13.    <u>Parties consent to trial by Magistrate Judge</u>?    Yes            X No

14.    <u>Type of Scheduling Order Requested</u>.  × Standard   □ Specialized  (If a specialized scheduling order is requested, counsel should include a statement of reasons and proposal.)

Submitted this 24th day of August, 2022.

                              */s/* Paul DeMuro
                              Paul DeMuro

                              Paul DeMuro, OBA No. 17605
                              FREDERIC DORWART, LAWYERS PLLC
                              124 East Fourth Street
                              Tulsa, Oklahoma 74103
                              Telephone:  (918) 583-9922
                              Fax:  (918) 583-8251
                              Email: pdemuro@fdlaw.com

                              Katherine Rosenfeld*
                              EMERY CELLI BRINCKERHOFF
                              ABADY WARD & MAAZEL LLP
                              600 Fifth Avenue, 10th Floor
                              New York, New York 10020
                              Telephone:  (212) 763-5000
                              Fax:  (212) 763-5001
                              Email: krosenfeld@ecbawm.com
                              *Admitted Pro Hac Vice*

Henry A. "Hank" Meyer, III
Attorney at Law
BEHENNA, GOERKE, KRAHL & MEYER
Oklahoma Tower
210 Park Avenue, Suite 3030
Oklahoma City, OK 73102
Office: (405) 232-3800
Fax: (405) 232-8999
Email: hank@lawfirmokc.com

*Attorneys for Plaintiff Christina Smith*

s/ Devan Pederson
(signed with permission)
**JESSICA WILKES, OBA #34823**
**DEVAN PEDERSON, OBA # 16576**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Email: devan.pederson@oag.ok.gov
　　　Jessica.wilkes@oag.ok.gov

*Attorneys for Defendants Allbaugh, Bear, Balogh, and Miles*

s/Amy Sherry Fischer
Larry D. Ottaway-OBA# 6816
Amy Sherry Fischer-OBA# 16651
FOLIART, HUFF, OTTAWAY & BOTTOM
201 Robert S. Kerr Avenue, 12th Floor
Oklahoma City, Oklahoma 73102
Telephone: (405) 232-4633
Fax: (405) 232-3462
larryottaway@oklahomacounsel.com
amyfischer@oklahomacounsel.com

*Attorneys for Defendant Hays*